CROWLEY v. THE BURLINGTON, CEDAR RAPIDS & NORTH-
ERN R'Y Co.

1. **Railroads**: UNLAWFUL SPEED IN CITY: PERSONAL INJURY: PROXIMATE
CAUSE: QUESTION FOR JURY. Although it appears that the plaintiff in
this case, who was employed in cleaning ice and snow from defendant's
track, saw the car coming by which he was struck, and had got out of
its reach, but, on account of slipping and falling, he was struck and
injured, yet, where the evidence further showed that the car was moving
at a rate of speed forbidden by the ordinances of the city in which the
accident occurred, *held* that it could not be said as a matter of law that
the unlawful rate of speed was not the proximate cause of the injury, and
that the trial court properly submitted that question to the jury.

2. ———: MEASURE OF DILIGENCE REQUIRED OF EMPLOYE IN WATCHING
FOR CARS. An employe working at his post on a railroad is not held to
the same measure of diligence in looking for approaching trains as a
traveler who is about to cross the track.

3. ———: ORDINANCE REGULATING SPEED: CONSTRUCTION OF. An ordi-
nance regulating the speed of railway trains in a city should not by con-
struction be limited in its application to those portions of the city used
by the public. Such ordinances apply to switch-yards as well.

4. ———: PERSONAL INJURY: NEGLIGENCE: PLEADING: EVIDENCE:
INSTRUCTION. In an action for a personal injury to an employe through
the negligence of a railway company, it is not necessary to allege that,
though plaintiff was negligent, yet the defendant might have avoided
the injury by the exercise of reasonable care, in order to justify the
admission of evidence and an instruction based on that theory.

5. **Evidence**: PREPONDERANCE OF: INSTRUCTIONS. Instructions in
regard to the preponderance of evidence, which stated that "witnesses
are weighed, not counted," *held* correct, when taken all together.

*Appeal from Benton District Court.*

WEDNESDAY, APRIL 8.

THE plaintiff seeks to recover damages by reason of the
alleged negligence of the employes of defendant, whereby
plaintiff was struck and injured by a moving car. There was
a trial by jury, and a verdict and judgment for the plaintiff.
Defendant appeals.

*J. & S. K. Tracey*, for appellant.

*Bowman & Swisher*, for appellee.

ROTHROCK, CH. J.—The plaintiff was employed by the defendant as a laborer in cleaning snow and ice from its tracks and switches, and he claims that on the ninth day of February, 1881, while so employed in the yard of defendant at the city of Cedar Rapids, the defendant negligently caused one of its cars, with great force, and at a speed in violation of the ordinances of said city, to strike plaintiff, and to run on and over his right arm, by which he was greatly injured, and that such injury was received without any negligence on his part.

1. RAILROADS: unlawful speed in city: injury to employe: proximate cause: question for jury.

The answer, in addition to a general denial, avers that if plaintiff was injured by a moving car it was by his own want of proper care and caution, in not looking and listening for moving cars, and in not keeping out of the way of such cars.

The plaintiff was a witness upon the trial, and his testimony, as abstracted by appellant, is as follows:

"I am plaintiff in this suit; am fifty-one years old, and live at Cedar Rapids. At the time of the accident, I was working for defendant as a section hand in its yards at Cedar Rapids, cleaning out snow from the switches. There was a little ditch at the switch I was cleaning out, so the water could run through. Just before I got hurt, I was standing outside of the track, between it and a snow bank, which was three or four feet high, at the side of the track, cleaning this ditch. I always looked every once in a while. I was very careful and looked out for myself, because I was a little hard of hearing, and it made me more cautious to look out. It had been thawing, the snow had melted, and the water was running. The accident happened in the afternoon at about three or four o'clock. A car came along, and was pretty close to me when I raised my head and looked. I then jumped to

get out of the way of the car, and my foot slipped or caught in some way, I can't tell how, and before I could get out of the way the car came up and hit me, knocked me down on my face and hands, and broke my arm in three places. I had been working for the company about four years. At the time I got hurt I was getting one dollar and twenty-five cents per day. My arm is very painful yet, and I suffered awfully, and can hardly do anything at all.

"I had been working about two months in this yard before I got hurt. There is a great deal of switching done there in the yard, and cars are moved up and down constantly, and hence it is a dangerous place to work, unless you look out and watch. At the time, I was cleaning the snow out of the track and this little ditch, and was standing on the west side of the track, between the snow bank and the track. The track is nearly straight there. You can look down the track (south) some two or three hundred yards. You can see the track down to the switch target. I did not see this car coming until it was close onto me. Then I attempted to get away from the track, and my foot slipped and the car struck me. I was outside of the track, between it and the snow bank, when I slipped and fell."

The plaintiff, in an additional abstract, sets forth the following as an amendment to his testimony:

"During February, 1881, at the time I got hurt, I was section hand or repair-man on the B., C. R. & N. R'y, and my run was from Cedar Rapids to Linn Junction. I went out on the line on a hand car. I was under the direction of an overseer or boss. I was directed by the boss on the morning of February ninth to clear the switches on the track, so that the water would go from the switches. When I was clearing out the switches, there was a bank of snow beside the track. I was cutting a drain through the bank of snow to let the water from the switch into the street. At the time the car struck me, as near as I can remember, I was standing with my face towards the track, on the outside, kind of half

towards the track—in between the track and bank of snow. The bank of snow was between three and four feet high. The water was running that day. I was out in the middle of the afternoon, about three or four o'clock."

The foregoing was all the testimony given by plaintiff as to the cause of the accident, and all of the witnesses testified substantially to the same facts. There was a conflict of evidence as to the speed with which the car was moving at the time of the accident, but the jury was warranted in finding that it was running at the rate of from ten to twelve miles an hour. By an ordinance of the city, which was introduced in evidence, no car or engine was permitted to run along any railroad track in the city at a greater rate of speed than six miles per hour.

At the close of the introduction of plaintiff's evidence, the defendant moved the court to direct the jury to return a verdict for the defendant. The motion was overruled. The defendant excepted to the ruling, and now claims that it was erroneous.

It is claimed that the evidence shows that the plaintiff was outside of the track, and away from danger, and that he slipped and fell on the snow and ice, and thus came in contact with the car; and it is urged that the speed of the car was not the proximate cause of the injury, but that it was caused by the plaintiff's slipping and falling after he was out of danger.

We do not regard the evidence as at all clear upon this point. It does not appear that the plaintiff was run over by the wheels. He received his injury by a collision with some part of the car. But, if we were to concede that he was out of danger, and slipped, and thus came in contact with the car, we do not think that it can be said that the speed of the car was not the cause of the injury. It is not claimed that the company was negligent in allowing the snow and ice to remain so near the track; but those alone would not have created the danger. If such snow banks and ice must exist

in close proximity to the track, and where the employes of the company must do their work, there is the more necessity for a prudent movement of the trains and engines among them. The plaintiff testified as follows: "I jumped to get out of the way of the car, and my foot slipped or caught in some way." We think it was a fair question for the jury whether, if the car had been moving at a proper rate of speed, the plaintiff might not have moved out of the way with such deliberation and care that he would not have fallen. If a horse is improperly driven upon a street, and a person who is near being run over jumps to get out of the way, and unintentionally steps upon ice and slips, and is run over, it cannot be said as matter of law that the improper speed with which the horse was driven was not the proximate cause of the accident. It is true that the accident might have happened if the car had been allowed to approach him only at a proper rate of speed. No one can determine with certainty how it would have been. We think that was a question to be determined by the jury, in view of all the circumstances shown.

Again, it must be remembered that the plaintiff did not bear the relation of a stranger to the defendant. He was not on the track, and in a place of danger, for his own convenience, curiosity or pleasure, nor even as a traveler at a crossing. He was an employe of the defendant, and was at his post of duty. There was a great deal of switching done in the yard, and the evidence shows that "cars are moved up and down constantly," and that it is a dangerous place to work. The plaintiff's duty required him to do the work he was placed there to perform, and he had the right to suppose that the defendant would exercise care to avoid sending cars along the track at an inordinate and unlawful rate of speed. In *Ominger v. N. Y. Central & Hudson R. R'y Co.*, 4 Hun., 159, it is held that the rule which requires a traveler, about to cross a railway track, to look in both directions for approaching trains, is not applicable in its strictness to an employe at

2. ——: measure of diligence required of employe in watching for cars.

work on the track, because such an obligation would be inconsistent with his proper attention to his work. In *Good-fellow v. B. & H. & E. R'y Co.*, 106 Mass., 461, the plaintiff was in the employ of a contractor at work for the defendant. He was holding the guy of a derrick, and an engine backed down and injured him. At the trial, a verdict was directed for the defendant, and the ruling was reversed. The court said:

" There is evidence that he was rightfully where he was, and was not in fault in being engrossed in his work, and unaware of the approach of the engine until it was too late to avoid it." We do not think the court erred in overruling the motion.

II.   It is further claimed that the court erred in instructing the jury that. the ordinance restricting the running of cars in the city at a rate of speed not more than six miles an hour applied to the switch yards of the defendant. It is said that the ordinance is applicable only to that part of the city used by the public. This would limit the operation of the ordinance to such places as the public have a right to travel, which would include only public crossings. We do not think it should be so limited in its application.

*3. ——:*
*ordinance*
*regulating*
*speed: con-*
*struction of.*

There are other objections to instructions given, and to the refusal to give instructions asked, which we do not deem it necessary to discuss in detail. None of them appear to us to be well taken. We think that the case was fairly tried and presented to the jury, and that the verdict is fully supported by the evidence.

                                                        AFFIRMED.

SUPPLEMENTAL OPINION.

ROTHROCK, J.—I.   After the foregoing opinion was filed, a petition for rehearing was presented, in which counsel

4. ———: personal injury: negligence: pleading: evidence: instruction. insists that this court should pass upon two assignments of error more specifically than is done in the closing paragraph of the opinion. The first of these objections is based upon the following instruction given by the court to the jury: "(4) If you should find from the evidence that the plaintiff was negligent, still the defendant could not escape liability, if the act which caused the injury was done by defendant after it discovered plaintiff's negligence, if you should find from .the evidence that defendant could have avoided the injury in the exercise of reasonable care." It is not claimed that this instruction is an incorrect statement of the law, but it is insisted that there is neither averment nor proof that the defendant could have prevented the injury after the discovery of plaintiff's negligence. We do not think such an allegation is necessary to be made in the petition. It is a phase of the rights and obligations of the parties which arises upon the proofs rather than by pleading. We know of no rule of pleading which requires the plaintiff in actions of this character to confess negligence on his part, and avoid it by alleging that the defendant might have averted the injury by using proper care after the discovery of plaintiff's peril. The objection that there was no evidence to support the instruction does not appear to us to be well taken. There was evidence in the case to the effect that one Smith, a brakeman, saw the plaintiff, and called to him to warn him of the approach of the car, but made no effort to check its speed.

II. The other objection is made to the following instructions given to the jury: "(9) In law, a preponderance of evidence signifies the greater weight of testimony, and does not mean the greater number of witnesses. In other words, witnessses are weighed, not counted. (10) You are the sole judges of the weight of the testimony, and of the credibility of the witnesses. If there is a conflict, you will reconcile it, if possible to do so. If you cannot do so, you will then award credit to those witnesses and that

5. EVIDENCE: preponderance of: instructions.

testimony which you believe, as reasonable men, under all the circumstances of the case, worthy thereof, and reject such as you believe to be unworthy thereof. Consider the whole case and all the evidence carefully, and under the evidence and these instructions return that verdict which you believe to be warranted."

It is claimed that the proposition that the weight of testimony does not mean the greater number of witnesses, and that witnesses are weighed and not counted, are incorrect statements of the law. We think that instruction No. 9 might well have been made a little more specific by stating that the weight of the testimony is not *necessarily* with the greater number of witnesses. But when both instructions are considered together, they plainly imply that this is what was intended by the court, and we think the jury was not misled. They surely would not be authorized under these instructions to reject the testimony of two or more credible witnesses, against the testimony of one equally credible, without some good reason for so doing.

The petition for rehearing is overruled, and the judgment

AFFIRMED.