WILLIAM CAHILL, Appellee, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

Railroads: NEGLIGENCE OF TRAINMAN: VIOLATION OF COMPANY RULES.
1  Plaintiff was an engineer in the employ of the defendant company owning the track, but brought his action against the

defendant company using the track subject to rules of the former company. One of the operating rules provided that whenever the train stopped under such circumstances that it might be overtaken by another train, the flagman must go back with stop signals and the train must be protected in front in the same manner. *Held,* that the rule vested in the engineer some discretion as to sending out signals, thus rendering the ultimate question of his contributory negligence in failing to do so one of fact.

**Same:** INSTRUCTION: SPECIAL FINDINGS. The evidence shows that the engineer placed his engine at the watering tank on the main track and was run into by defendants train, from which he received his injuries. The court instructed that if he was acting under the order of the conductor and as a reasonably prudent person would do under the circumstances; that if in the exercise of ordinary care he was warranted in believing that he could then and there safely take water, notwithstanding his train orders; and that he was sufficiently protected under other rules of the company, he was not negligent in having his engine upon the track. Special interrogatories were returned finding that the engineer had not protected himself by signals as required by a rule of the company; that he relied on other rules of the company for protection; and that the collision might have been avoided by the exercise of ordinary care on the part of defendant's trainman. *Held,* that from an application of the instruction, which must be regarded as the law of the case, to the special interrogatories, and the general verdict for plaintiff it does not appear that there was a finding of contributory negligence on the part of the engineer.

**Negligence:** LAST CLEAR CHANCE: PLEADING. An issue of the last clear chance is charged in the petition alleging that trainmen neglected to stop the train until the collision occurred causing plaintiff's injury. And where evidence was taken on such issue and defendant requested an instruction thereon, it could not be heard to say that no such question was presented by the pleadings.

**Collision:** REASONABLE CARE: EVIDENCE. Where there is other evidence on the subject the jury is not bound by the statement of an engineer of an approaching train as to whether, by the exercise of reasonable effort he might have seen plaintiff, who was rightfully upon the track, in time to have avoided the accident. In the instant case the evidence is held to justify a finding that trainmen failed to use reasonable effort to stop the train after discovering plaintiff's peril.

**Same.** Even though plaintiff, an engineer, was in his engine and

those in charge of the approaching train did not actually see him, still they were bound to know that he was likely to be there, and being rightfully there he was entitled if possible to protection against the impending collision.

*Appeal from Scott District Court.*—HON. J. W. BOL-LINGER, Judge.

SATURDAY, JUNE 5, 1909.

ACTION at law to recover damages for injuries received by plaintiff due to the collision of an engine which he was operating with one of defendant's trains. Trial to a jury, verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Lane & Waterman* and *Cook, Crocker, Loomis & Tourtellot,* for appellant.

*Ely & Bush* and *M. J. Wade,* for appellee.

DEEMER, J.—The action was originally brought against the Davenport, Rock Island & Northwestern Railway Company and the Chicago, Milwaukee & St. Paul Railway Company. We shall hereafter call one the "Davenport Company" and the other the "Milwaukee Company." It appears that the Davenport Company's road runs east from Davenport to Clinton, and that the Milwaukee Company was using the same line for the conduct of its business between these two places. When running on the Davenport Company's line, the Milwaukee Company was subject to the rules of the former company and to the orders of its train dispatcher. Plaintiff was in the employ of the Davenport Company as an engineer of its work train, which was known as "No. 21," and on the day of the accident in question, May 1, 1907, he was out on the road with his train and at Princeton station,

which is about twenty miles east of Davenport and about five miles east of a station known as Le Claire. When at Le Claire at about 1:45 p. m., he received the following train order: "Work extra No. 21 will work 1:45 p. m. until 5 p. m. between Princeton and Le Claire, protecting against extra 849 east after two ten (2:10) p. m., and against extra 1021 east after two forty-five (2:45) p. m., and protect against 841 west after two thirty (2:30) p. m. I. A. S." After receiving the order, plaintiff took his train west from Princeton to Le Claire and ran it upon a siding at the latter point; the engine being at the west end of the train. The train consisted of nine or ten cars with the engine. It was run in upon the side track so as to clear. As we understand it the train arrived at Le Claire and was registered at 2:10 p. m. Plaintiff's engine was short of water, and the conductor of the train, who was on the engine with plaintiff, said, "We will back up and get water." Pursuant to this direction, the engine was cut off from the train and started west to the water tank. In moving west it was coupled onto a coal car which stood upon the siding, and the engine, pushing the coal car, moved backward onto the main track and stopped at the water tank. Collister, the conductor, then said to plaintiff that he would see where 849 was, and he walked back, eastward toward the depot, which was two hundred and twenty-five feet from the water tank. He reached the depot, and had but time to ask the operator where the train was, when he heard the whistle of the engine on that train which was coming from the west. Upon hearing this he started to run toward the west, but soon turned round and started toward the engine of his own train. When plaintiff saw train No. 849 coming toward him, he started his engine toward the east to avoid the collision, but had gone only a little way when the engine of 849 struck the coal car, and plaintiff, who was leaning out of the cab window of his engine, was thrown therefrom and

received severe injuries. It is for these that he seeks to recover damages.

It is claimed that when Wiegand, the engineer of train No. 849, saw plaintiff's engine, he did all in his power to stop it, and that when he saw a collision was inevitable, and that the water spout at the tank was across the track, both he and his fireman jumped in order to save themselves from injury. Train No. 849 passed the Le Clair depot at 2:14 p. m. The negligence charged against the Milwaukee Company is: (1) That it ran its train 849 into Le Claire at a high and dangerous rate of speed; (2) that it violated a rule requiring trains to reduce speed in passing through yard limits and to proceed only as the way is seen or known to be clear; (3) that it violated a special rule as to Le Claire station to the effect that in approaching said station the engineer was to reduce speed and have his train under control until the engineman saw that the way was clear; (4) that train No. 849 went by a stop signal at Le Claire, against a rule providing that a train must not pass while the "stop" signal is indicated; and (5) that the engineer of No. 849 negligently failed to stop his train before the collision. Certain rules of the Davenport Company which were also applicable to the Milwaukee Company are important to the case, and we here set them out. The first is known as "No. 99," reading as follows: "When a train stops or is delayed under circumstances in which it may be overtaken by another train, the flagman must go back immediately with stop signals a sufficient distance to afford protection. When recalled, he may return to his train, first placing two torpedoes on the rails, when the conditions require it. The front of a train must be protected in the same way, when necessary, by the front brakeman, or in his absence by the fireman." Other rules read:

"No. 105. Both conductors and enginemen are responsible for the safety of their trains, and under condi-

tions not provided for by the rules must take every precaution for their protection.

No. 106.   In all cases of doubt and uncertainty, the safe course must be taken and no risks run.

No. 204.   Train orders must be addressed to those who are to execute them, naming the place at which each is to receive his copy.   Those for a train must be addressed to the conductor and engineman and also to any one who acts as pilot.   A copy for each person addressed must be supplied by the operator.

No. 210.   Conductors must show their train orders to flagman and engineman to fireman, who are required to read them.

No. 220.   Train orders, once in effect, continue so until fulfilled, superseded or annulled."

In addition to these were the following:   "All trains approaching Le Claire and Princeton in either direction will reduce speed and have trains under control until engineman can see that the way is clear, and all trains will reduce speed in passing through yard limits and proceed only as the way is seen or known to be clear.   A fixed signal must be used at each train order office which shall indicate 'Stop' when there is an operator on duty, except when changed to 'Proceed' to allow a train to pass after getting train orders or for which there are no orders.   A train must not pass the signal while 'Stop' is indicated. The signal must be returned to 'Stop' as soon as a train has passed.   It must be fixed at 'Proceed' only when no operator is on duty."

On the issues joined the jury returned a verdict in favor of the Davenport and against the Milwaukee Company, and in answer to special interrogations made the following findings:   "(1) Was Cahill's engine protected as required by rule No. 99 while it was at the tank taking water?  Ans.  No.  (2) Did Cahill, while his engine was at the tank taking water, rely upon the protection given

him by the stop signal and by the rules limiting the speed of trains through Le Claire? Ans. Yes. (3) Did the collision occur after 2:10 p. m.? Ans. Yes. (4) After Wiegand discovered plaintiff's peril, did he do all he reasonably could in the exercise of ordinary care to avoid the collision? Ans. No. (5) After Wiegand discovered plaintiff's peril, could he by exercising ordinary care have avoided injury to plaintiff? Ans. Yes."

The appeal is by the Milwaukee Company, and for a reversal it relies upon the following propositions: (a) The trial court erred in not directing a verdict for defendant because the evidence showed that plaintiff was guilty of contributory negligence, and there is a total absence of testimony showing any negligence on the part of Engineer Wiegand after he discovered plaintiff's peril; (b) because the court was in error in submitting the doctrine of last clear chance to the jury; and (c) because the court should have sustained defendant's motion for a judgment based upon the answers to special interrogations Nos. 1, 2 and 3. No complaint is made of the instructions, save it is contended that the court was not justified in submitting the case on the doctrine of last clear chance for the reason that no such issue was tendered by the pleadings.

I. The negligence of defendant being conceded, we shall first take up the question of plaintiff's contributory negligence. The jury found that he had violated rule No. 99 regarding the protection of his engine while at the water tank, that the collision occurred after 2:10 p. m., but that he (plaintiff) relied upon the protection of the stop signal and upon the rules with reference to speed and control of engine while running through the town of Le Claire. In this connection the trial court gave the following instruction, which was not excepted to, and of which no complaint is made:

1. RAILROADS: negligence of trainmen: violation of company rules.

If you find that plaintiff on the day mentioned moved his engine onto the main track at Le Claire and attempted to take water while there in obedience to orders from his conductor, and that said conductor was then his superior in control of said train and its crew, and that plaintiff acted as a reasonably prudent person would have done under similar circumstances in so taking his engine to the water tank and attempting to get water at that time and place, and that in the exercise of ordinary care he believed he could then and there so take water in safety, and notwithstanding train order No. 39, which he received at Princeton, he further believed, and was warranted in so believing, that he was then and there sufficiently protected under all the rules and circumstances, including the 'stop' signal at the signal board and the rules as to yard limits and as to trains entering Le Claire, then, and upon your so finding from the preponderance or greater weight of evidence, plaintiff was not negligent in moving his engine and having it at the water tank at the time of the collision.

It would seem that violation of the terms of rule 99 would not under this instruction of itself constitute contributory negligence.   Indeed under the rule itself some discretion is vested in the engineer in regard to sending out a flagman in front of a train.   That being true, the ultimate question of contributory negligence was for the jury.   *Canon v. Railroad,* 101 Iowa, 613; *Christiansen v. Railroad,* 140 Iowa, 345.

For the purposes of our present inquiry the instruction quoted must be treated as the law of the case, and, when applied to the special interrogatories and to the general verdict, it does not appear that there was a finding of contributory negligence.   There was no error in denying defendant's motion for judgment on these special findings. For like reasons there was no error in denying defendant's motion for a directed verdict.

2. SAME: instruction: special findings.

II.   Aside from this, however, the special findings

clearly show that under the rule of last fair chance plaintiff was entitled to a verdict under the special findings,

3. NEGLIGENCE: last clear chance: pleading.

conceding that plaintiff was negligent in going upon the main line of track under the circumstances disclosed. The proposition was submitted to the jury under the proper instructions; but defendant contends that no such issue was presented by the pleadings, and that, even had it been presented, there was not sufficient testimony to take the question to the jury. The petition charged that defendant's employees failed and neglected to stop the engine until the collision as aforesaid which caused the injury. This presented the question of defendant's conduct down to the very moment of the collision, and under the rule announced in *Crowley v. Railroad,* 65 Iowa, 658, the issue of last fair chance was in the case. See, also, *Ford v. Railroad,* 106 Iowa, 85. We are asked to overrule the *Crowley* case, but do not feel disposed to do so. Certainly not in this case in view of the allegations of the petition.

Moreover, testimony was taken on the issue and defendant asked the following instruction with reference thereto: "If you find that Wiegand, under instruction No. 24, exercised reasonable care in avoiding injury to Cahill, after he knew Cahill's engine was at the water tank, and also find Cahill was guilty of contributory negligence as defined in paragraph 20, then plaintiff can not recover against the Chicago, Milwaukee & St. Paul Company." Having asked this instruction, it is in no position to complain. *Seibert v. Insurance Co.,* 132 Iowa, 58.

III. Regarding the testimony, it was sufficient in our opinion to take the case to the jury. When the defendant's engineer saw the plaintiff and his engine was a question of fact for a jury, and the engineer's statement is not conclusive upon the proposition. *Purcell v. Railroad,* 117 Iowa, 667; *Christiansen v. Railroad,* 140 Iowa, 345; *Johnson v. Rail-*

4. COLLISION: reasonable care: evidence.

*road,* 122 Iowa, 556; *Barry v. Railroad,* 119 Iowa, 62. According to some of the testimony, the engineer of No. 849 saw plaintiff's engine when he was something like six hundred and twenty-three feet away from it, and it became a fair question for the jury as to whether or not he used every reasonable effort to stop his train before it struck the plaintiff's engine. The jury may have found that he did not put on the emergency brake or reverse his engine until after he had passed the depot. In the meantime he had run three hundred and sixty-five feet at the rate of fifteen or twenty miles per hour. It also appears that the engine was not reversed when it passed the depot. There was also testimony from which the jury may have found that the emergency brake was not put on at all. In view of the entire record a jury was justified in finding that defendant's engineer failed to use the care required of him after discovering plaintiff's peril.

The special findings in this respect have sufficient support. But it is said that defendant's engineer did not see Cahill, and that the doctrine now under consideration 5. SAME. does not apply. But this proposition cannot be sustained. He did see Cahill's engine, and was bound to know that there was likely to be some one in the engine. Cahill was properly at his post and was not a trespasser in the engine. He was entitled to protection against the impending collision. The cases cited by appellant's counsel on this proposition are not in point. In each plaintiff was a trespasser upon the defendant's property and was not where he had a right to be.

We discover no prejudicial error, and the judgment must be, and it is, *affirmed.*