DORA E. SPAULDING, Administratrix, Appellee, v. WILLARD D. MILLER et al., Appellants.

No. 43076.

DECEMBER 17, 1935.

Wilson & Wilson, and Stipe, Davidson & Davidson, for appellants.

Ferguson & Ferguson, for appellee.

KINTZINGER, C. J.—The accident causing the unfortunate death of George A. Spaulding occurred on the principal street in the center of the business district of the city of Shenandoah at about 6 o'clock p. m. on May 31, 1931.

This is the second appeal of this case. The first appeal appears in Spaulding, Adm'x, v. Miller et al., 216 Iowa 948, 249 N. W. 642, where most of the facts are fully set out and to which a reference is made to avoid repetition.

In this case plaintiff's decedent was passing from one side of the street to the other behind his own car. After passing the rear of his own car, he suddenly jumped back, when defendants' car following from the rear ran into decedent, crushing him between the rear bumper of decedent's car and the front bumper of defendants' car.

Immediately preceding the accident, decedent's car, which was driven by his son-in-law, was temporarily stopped near the middle of the block and near the center of the street. The parking space on both sides of the street was filled with cars parked at an angle to the curbs, extending about 14½ feet into the street from the curbs on either side, leaving a width of the driveway about 21 feet between the rear ends of the parked cars. When his car stopped, decedent alighted from the south side of his car, walked west around the rear end of his car, and turned north for the purpose of crossing the street to make a purchase at a cigar store on the north side of the street.

Defendant's car had been following decedent's car for about a block and a half at a distance of about 35 feet behind decedent's car. The street runs east and west, and both cars had been so

traveling in an easterly direction at a speed of about ten miles an hour.

Under the evidence in the former case, this court held that plaintiff's decedent was guilty of contributory negligence and reversed a judgment for plaintiff.

▌▌▌ The facts on the second trial bearing on decedent's actions and movements were identical with those shown on the first trial. Under these facts, we held on the former appeal that decedent was guilty of contributory negligence. The ruling on the former appeal, so far as it relates to the decedent's contributory negligence, therefore, constitutes the law of this case, and we are governed thereby. The lower court also instructed the jury to that effect.

The ruling on the former appeal will necessarily follow, unless it is affected by the doctrine of last clear chance, submitted to the jury on the retrial.

After the case was remanded and more than two years after the injury occurred, plaintiff filed an amendment to her petition specifically alleging the doctrine of last clear chance, as hereinafter referred to. Defendants' motion to strike this amendment was overruled.

At the close of all of the evidence, defendants also moved for a directed verdict, basing the same, inter alia, on the ground that the evidence conclusively established the contributory negligence of the deceased, and was insufficient, as a matter of law, to support a submission to the jury of the issue of last clear chance. This motion was overruled, hence the appeal.

▌▌▌ Appellants contend that the court erred in overruling their motion to strike plaintiff's amendment to the petition hereinabove referred to. After the case was remanded and before the second trial, plaintiff amended her petition by alleging that defendants' driver discovered decedent's perilous position in sufficient time, so that, in the exercise of ordinary care, she could thereafter have avoided the accident and injury to decedent.

Appellants contend that the amendment attempts to allege a new cause of action, and was barred by the statute of limitations. Appellee contends that the original petition alleged the defendants' negligence in causing decedent's injury and death; that the amendment did not allege a new cause of action, but was simply an amplification of the original negligence alleged, and for that reason the doctrine of last clear chance applies.

The amendment which defendants claim is a new allegation of negligence is the following:

"That defendant, Helena Miller, saw the said George Spaulding proceed around behind his automobile, and saw a car approaching from the east, and saw that * * * Spaulding was in a perilous position; that she observed said facts in sufficient time so that, by the use of reasonable care and caution, she could have stopped the said car she was driving, * * * and could have averted and prevented the said collision, which caused the death of George Spaulding."

Among the allegations of negligence alleged in the petition are the following:

"That the defendants' driver was guilty in not watching and keeping a proper lookout for other vehicles. * * *

"That said defendants were guilty of not stopping said automobile and applying the brakes, *in order to avoid the collision and the striking of said decedent and causing said injury.* * * *

"That said defendants were guilty * * * in not having the car under proper control at the time and place, and under the circumstances existing at the time of said injury. * * *

"That there was ample room in said highway * * * for defendant to have driven * * * around the automobile owned by decedent * * * which she failed to do, but instead * * * drove said defendants' automobile directly into the rear of said automobile owned by decedent, which was done negligently."

It is apparent that these allegations of negligence are alleged to have existed down to the very time of the accident and injury to the decedent. We have held that where it is alleged that the negligence complained of existed down to the very time of the accident and injury without any further allegation that the question of "last clear chance" is in the case, an instruction under such circumstances on that doctrine is proper. Cahill v. Chicago, M. & St. P. Ry. Co., 143 Iowa 152, loc. cit. 159, 121 N. W. 553.

It is the settled rule of law in this state that if a cause of action is based upon the negligence alleged in the original petition, the doctrine of last clear chance is included. Crowley v. Burlington, C. R. & N. Ry. Co., 65 Iowa 658, 20 N. W. 467, 22 N. W. 918; Cahill v. Chicago, M. & St. P. Ry. Co., 143 Iowa 152, 121 N. W. 553; Pettijohn v. Weede, 219 Iowa 465, 258 N. W. 72;

Bruggeman v. Illinois Cent. R. Co., 147 Iowa 187, 123 N. W. 1007, Ann. Cas. 1912B, 876.

In Pettijohn v. Weede, supra, l. c. 467, 258 N. W. 72, 73, we said:

"The last clear chance doctrine is founded upon negligence. Therefore an allegation of general negligence would include the last clear chance doctrine. Clemens v. Chicago, R. I. & P. Ry. Co., 163 Iowa 499, 144 N. W. 354; Crowley v. Burlington, C. R. & N. Ry. Co., 65 Iowa 658, 20 N. W. 467, 22 N. W. 918." In that case this court also said: "If the amendment set forth a new and distinct cause of action, it is barred by the statute of limitations. Plantz v. Kreutzer & Wasem, 192 Iowa 333, 183 N. W. 341. But, on the other hand, if the amendment 'merely amplifies the charge made in the prior pleading, or states new grounds or specifications germane to such charges or allegations, the amendment may be upheld without regard to the statute of limitations.' Gordon v. Chicago, R. I. & P. Ry. Co., 129 Iowa 747, loc. cit. 750, 106 N. W. 177, 178. To the same effect see James v. Winifred Coal Co., 184 Iowa 619, 169 N. W. 121."

In Cahill v. Chicago, M. & St. P. Ry. Co., 143 Iowa 152, loc. cit. 159, 160, 121 N. W. 553, 555, we said:

"The special findings clearly show that under the rule of last fair chance plaintiff was entitled to a verdict under the special findings, conceding that plaintiff was negligent in going upon the main line of track under the circumstances disclosed. The proposition was submitted to the jury under the proper instructions; but defendant contends that no such issue was presented by the pleadings, and that, even had it been presented, there was not sufficient testimony to take the question to the jury. The petition charged that defendant's employees failed and neglected to stop the engine until the collision as aforesaid which caused the injury. This presented the question of defendant's conduct down to the very moment of the collision, and under the rule announced in Crowley v. Burlington, C. R. & N. Ry. Co., 65 Iowa 658, 20 N. W. 467, 22 N. W. 918, the issue of last fair chance was in the case."

It is our conclusion that the allegations of the amendment merely amplify the charge of negligence alleged in the original petition and are germane to the allegations of negligence made

1112

therein. The amendment was, therefore, properly allowed to stand.

■■■ II. Defendants contend, however, that the court erred in submitting the question of ''last clear chance'' to the jury, because the evidence was insufficient to warrant the submission of that doctrine to the jury. Under this doctrine, appellee contends that, notwithstanding the contributory negligence of decedent, defendants are liable, because defendants' driver could, in the exercise of ordinary care, have avoided the collision and injury to decedent *after discovering decedent's perilous position.*

At the first trial, appellee produced witnesses who testified that the driver of defendants' car had been looking south into show windows, and not where she was driving. This was for the purpose of establishing defendants' negligence. At the second trial these witnesses were not produced, and appellee attempted to show that she was looking ahead all the time. This change of front was, no doubt, for the purpose of avoiding decedent's contributory negligence under the doctrine of ''last clear chance.''

This is a question of fact, however, and must be determined from the evidence introduced. A further review of the evidence showing what defendants' driver did after discovering decedent's perilous position is, therefore, necessary.

The evidence shows that after decedent had crossed into the street and passed the north side of his own car at the rear, he discovered another automobile approaching from the east. At that time he was in the center of the street and about two or three steps beyond the north side of his own car. He then looked west, stopped, and jumped back to a point about a foot south of the north end of his rear bumper, where he was caught between the cars. Up to that time, defendants' car had been traveling from 7 to 10 miles an hour; and, when decedent jumped back, the defendants' car was about 7 feet from decedent's car.

When the driver of defendants' car saw that decedent's car had stopped, she turned her car to the left for the purpose of passing around it. It is apparent that when she noticed the decedent's car stop, she turned to the left for the purpose of avoiding decedent's car, and just as she turned to the left, she noticed another car approaching from in front, and at that very moment the decedent jumped back behind his own car. The decedent had been in the middle of the street, and, noticing the car approaching from the east about the same time, he jumped back. After

getting back he immediately jumped up vertically to avoid being caught between the bumpers of his car and appellants' car. He failed to jump high enough, however, and both of his legs at the ankles were crushed between the bumpers.

The evidence shows without dispute that decedent had reached a point about 3 feet north of the side of his own car before he jumped back. Although he was in danger of the general vehicular traffic by attempting to cross a busy street in the middle of the block, he was not, before jumping back, in the perilous position created by himself in suddenly jumping back behind his own car. Defendants' driver did not observe this perilous situation until she saw him jump back between the cars. He was then in the perilous position of being caught between the cars, and he then immediately jumped up vertically into the air to avoid being caught between the bumpers. During the short space of time he was in the air, before he reached the top of his own bumper, or before his feet returned to the ground, the defendants' car traveled the short space intervening between the cars. This is a circumstance showing the short time intervening between the time decedent jumped into this perilous position, and the time of the collision.

Upon the question of the care used by the driver of defendants' car, it is interesting to note what she says about the situation existing just before and at the time of the collision. She was a witness for plaintiff, and testified as follows:

"I saw Mr. Spaulding start out around the back of their car and I started to turn to the left, but then there was a car coming from the east and I couldn't turn out that way and then he started north and then he jumped back. Immediately after I first turned to the left, I turned back. After I saw him going back, I tried to turn to the left again. I thought he was going on across the street and when I turned out to the left and a car was coming, and when he jumped back again it confused me as I couldn't go forward and I couldn't go around as there was another car coming. Just immediately before the accident, I remember reaching down and pulling on the emergency brake. It seemed like just about the time we crashed.

"I didn't notice the Spaulding car stop because I thought it was moving along real slow. The first I noticed it stop was this man coming around the back and I noticed it was stopped. * * *

When I first saw him he had reached the rear end of his car, * * * and was just starting north. He then went out into the street past the rear end of his car * * * a few steps north. * * * He got to the edge of the car and I started to turn and he jumped back.''

When the driver of defendants' car saw decedent attempting to cross the street, she was not bound to assume that he would suddenly jump back in front of her own car. Stanoshek v. Chicago, R. I. & P. R. Co., 198 Iowa 62, 199 N. W. 310; Albrecht v. Berry, 202 Iowa 250, loc. cit. 254, 208 N. W. 205; Aerkfetz v. Humphreys, 145 U. S. 418, 12 S. Ct. 835, 36 L. Ed. 758.

In her argument, appellee says:

''Mrs. Miller * * * saw Mr. Spaulding start north behind his car, and after getting just beyond his car, saw him jump back * * * behind his car. Mrs. Miller then turned her car back in its original course. *When she saw Mr. Spaulding jump back behind his car, her car was 6 or 7 feet away.* Mr. Spaulding then jumped up before the accident.''

The question for determination, therefore, is: Was there sufficient evidence from which the jury could find that the defendants' driver, after she discovered decedent's perilous position between the two cars had sufficient time, in the exercise of rasonable care, to have avoided the collision?

Appellants contend that the doctrine of ''last clear chance'' should not have been submitted to the jury, because the evidence fails to show that the defendants' driver, after discovering the decedent's perilous position, could, in the exercise of ordinary care, have prevented the collision and injury to decedent. When decedent jumped behind his own car, appellants' car was about ''6 or 7 feet behind'' decedent's car; and appellee claims that, notwithstanding the decedent's contributory negligence, the defendants' driver had sufficient time within that distance, by the exercise of ordinary care, to have stopped her car and have avoided the collision.

While it may be conceded that the defendants' driver was guilty of negligence in not stopping her car *before* discovering decedent's perilous position, and that such negligence continued until the collision took place, we are asked to say there was evidence tending to show that she could, by the exercise of ordinary care, *after* discovering decedent's perilous position, have avoided the injury.

The evidence shows without dispute that the cars were only about 7 feet apart at the time Mr. Spaulding jumped behind his car. It is also apparent from the evidence that appellants' driver applied her brakes at or before the time her car covered the intervening space. It is also apparent that she did not notice the dilemma in which they were both placed until she saw the car approaching from the east. It is fair to assume from the record that at the very time she turned to the right, the decedent jumped in front of her car. Until that time she expected to pass around decedent's car to the left, and on finding that impossible on account of the approaching car from the east, she turned to the right. She was then about 7 feet from decedent's car. That distance is a little more than the average height of a man. It is within that distance, and within a fraction of a second, that plaintiff claims defendants' driver, in the exercise of ordinary care, could have stopped her car.

Appellee produced only one witness, who says that in his *opinion* a car traveling at a speed of from ''7 to 10 miles an hour could be stopped by the application of the brakes in some three to five feet.'' The testimony of this witness necessarily implies that the car would stop in that distance after the application of the brakes. It is a matter of common knowledge that in order to bring a car to a stop, it is first necessary to bring the muscles of the arms and legs into control, and that some time must elapse before this is accomplished. The evidence shows without dispute that defendants' car had been traveling from 7 to 10 miles an hour. A car traveling at that rate would travel a distance of *ten* feet in *one* second. It would, therefore, take less than three-fourths of a second to travel 7 feet. From this calculation, it necessarily follows that the driver of decedent's car had only a *fraction of a second within which to exercise reasonable care* to avoid injuring the decedent after discovering his perilous position. If, therefore, it would take only a fraction of a second to apply the brakes, it necessarily follows that defendants' car would have traveled about the entire 7 feet before the brakes could even be applied.

If, as a matter of common knowledge, it appears that such an opinion is not correct, then it can be considered as no more than a mere scintilla of evidence. It is the settled rule of law in this state that a mere scintilla of evidence cannot support a verdict. Wendt v. Foss, 161 Iowa 122, 140 N. W. 881; Schmidt v.

1116

Hayden, 205 Iowa 1369, 219 N. W. 399; In re Estate of Work, 212 Iowa 31, 233 N. W. 28.

It is our conclusion from the entire record in this case that plaintiff has failed to establish any liability under the doctrine of last clear chance. The testimony shows without dispute that the defendants' driver could not, by the exercise of ordinary care, *after discovering decedent's perilous position,* have avoided the collision; the only matter submitted to the jury in this case with reference to a liability was under the doctrine of "last clear chance." All other matters were disposed of in the former appeal. We are constrained to hold that defendants' driver could not, in the exercise of reasonable care, have avoided this injury within a fraction of a second. It necessarily follows that defendants' motion for a directed verdict should have been sustained.

For the reasons hereinabove expressed, the judgment of the lower court is hereby reversed.—Reversed.

ALBERT, MITCHELL, DONEGAN, POWERS, PARSONS, HAMILTON, and ANDERSON, JJ., concur.