EDWARD H. EHRHARDT et al., dba CEDAR RAPIDS RENDERERS,
appellees, v. RUAN TRANSPORT CORPORATION et al.,
appellants.

No. 48354.

(Reported in 61 N.W.2d 696)

194

December 15, 1953.

Jordan & Jordan, of Cedar Rapids, for appellants.

V. C. Shuttleworth and C. W. Garberson, both of Cedar Rapids, for appellees.

LARSON, J.—This collision on Highway 13 about 8 miles north of Manchester, Iowa, occurred on December 14, 1948, about 3 or 3:30 p.m. The plaintiff Edward H. Ehrhardt was operating a 1947 Chevrolet 1½ ton truck owned by his employer, the plaintiffs Edward F. Hopton and Gene Hopton, d/b/a Cedar Rapids Renderers, loaded with about a ton of deceased cattle and hogs, when it collided with defendant Ruan Transport Corporation's tractor-trailer carrying some 5000 gallons of gasoline and weighing about 55,000 pounds, operated by defendant Robert Wayne Scott. The Renderers' truck was southbound and the Ruan transport northbound. The pavement at this point was straight, with a down slope to the north but which turns up again a short distance north of the point of collision. It was raining, sleeting and misting, and the pavement was like glass. Both drivers could see ahead, but not clearly. Plaintiffs' truck was traveling about 12 or 15 miles per hour and defendants' about 20 or 25 miles per hour. There were no eyewitnesses except the drivers of the involved vehicles. Their testimony was somewhat in conflict. The jury denied recovery by the plaintiffs and also refused recovery by the defendants on their counterclaim.

Defendants assign three grounds of error. They contend that the trial court erred in failing to include in the statement of the issues and instructions thereon counterclaimants' specification of negligence designated 7(c) which stated: "In failing to keep control of their equipment under the conditions then and there existing, including the condition of the highway at the point of meeting", and also counterclaimants' specification of negligence designated 7(d): "In failing to keep a proper lookout at or about the time of meeting on said highway in view of the conditions then and there existing."

In instructing the jury on the claims of both plaintiffs and defendant-counterclaimants the trial court submitted only the issue of the drivers' negligence in failing to yield one half the traveled way.

■ I. The evidence is meager bearing on the question of where and how the impact occurred. However, it is true that in passing on the sufficiency of the evidence to justify the submission of the issues 7(c) and 7(d) to the jury, the testimony must be viewed in the light most favorable to the defendant-counterclaimants herein. Hebert v. Allen, 241 Iowa 684, 687, 41 N.W. 2d 240, 242, and citations. Robson v. Barnett, 241 Iowa 1066, 1068, 44 N.W.2d 382.

■ We shall consider the issues relating to 7(c) and 7(d) together, though even the defendants admit the evidence as to failure to maintain a proper lookout is slight. We have held that a car is "under control" within the meaning of the law if it is moving at such a rate, and the driver has the mechanism and power under such control, that it can be brought to a stop with a reasonable degree of celerity. Carruthers v. Campbell, 195 Iowa 390, 392, 192 N.W. 138, 28 A. L. R. 949; Carlson v. Meusberger, 200 Iowa 65, 76, 204 N.W. 432.

In Gilbert v. Vanderwaal, 181 Iowa 685, 165 N.W. 165, we also held that having a car under control refers to the ability to stop the car within a reasonable distance in view of the circumstances, and this holding was quoted with approval in Duncan v. Rhomberg, 212 Iowa 389, 236 N.W. 638. These definitions of the term, of course, are broad enough to include a necessary change in the direction of movement. Johnson v. Kinnan, 195 Iowa 720, 723, 192 N.W. 863,· 865. We said there: "Likewise the ability to divert or change its course, may be properly involved in the question of control." Also see Lynes v. Schmolt, 241 Iowa 1303, 1306, 45 N.W.2d 221, 222. Turning then to the testimony which defendant-counterclaimants rely upon as the basis of their claim that the court erred in not submitting specification 7(c) to the jury, Ehrhardt testified that he had his windshield wiper going, was on his half of the highway driving southward at about 12 or 15 miles per hour; that he saw the Ruan truck a quarter of a mile away and noted its lights were on; that he was poking along and had a habit of coasting by approaching vehicles when on ice. He stated that as the Ruan truck approached it looked as if the dual wheels were across the black center line, and that there was not room to pass on that piece of

pavement. It seemed to him as if the duals were over the center line ten inches. He stayed as he was until just before meeting defendant, and then he tried to get his wheels over. As he turned to the right the collision occurred. There is a half curb along each side of the 18-foot pavement of about 12 inches on each side, which would make the smooth part of the pavement only 16 feet wide at that point. The duals on the northbound tractor-trailer were 7½ feet wide and this was the rig's widest part. Plaintiff said he was unable to get his wheel over the half curb to get out on the shoulder and, as he tried, they hit. He did not believe his truck moved to the right or left before the crash. He was rendered unconscious for some three to five minutes. His truck was then in the grass on the west side of the pavement headed west, with the rear end some two feet off the pavement. The radiator and left front fender were smashed.

The sheriff and a highway patrolman arrived at the scene of the accident some thirty or forty minutes later and, even with their experience, were unable to draw any conclusions from the physical aspects of the situation, and by examining the pictures they were still unable to find anything to signify where or on what half of the highway the accident occurred.

Floyd Knickerbocker, who lives near the scene and who recalled waving to plaintiff Ehrhardt as he passed just before the collision, had turned away and did not see the accident. Before turning away, however, he had seen both vehicles and noted that they were not going fast. While he was some distance from the Ruan truck, it seemed to be on its own side and coming in a straight line. He observed Ehrhardt was also going in a straight line, but had the impression he was going to get up on the shoulder at the spillway before meeting the Ruan truck. He did not say he saw this occur, and did not look further until he heard the crash.

The only other witness was defendant driver, Scott, who said he was moving about 20 or 25 miles per hour. He saw the Renderers' truck about a quarter of a mile away and watched it all the time. He could see the black center line and was moving on a down slope, not too steep, when they collided. He stated that plaintiff was on his own side of the road until he got to the spill-

way, and then he tried to get up on his shoulder with his front wheels. He did get his front wheels on the shoulder, but his duals were sliding along the edge of the curbway with the duals out sideways, and that was his position in the road. Regardless, defendant Scott kept coming on, believing everything was all right if plaintiff kept coming like he was, and the next thing he knew he was on fire. This was his testimony of the occurrences in the last 150 feet. Scott further testified that the front end of the Renderers' truck collided with his tractor, striking his duals back of his cab, the widest part of his equipment. He claimed the impact came on his side of the pavement, but that it did not involve the front end of his tractor. After the crash Scott's vehicle went out of control and slid down the pavement 250 feet, coming to rest in the spillway headed west on the west side of the road. It was afire and burned. On cross-examination defendant Scott was asked:

"Q. If you were on your own side of the road why would Mr. Ehrhardt attempt to pull off? A. That is one question I can't answer. I don't know why the man tried to pull onto the shoulder. It being slippery he should have known better, that you can't get over the half curb. * * * Q. When a man does that he usually has a reason for it? A. In my estimation it is poor driving for anyone to pull off onto the shoulder when meeting a vehicle. Q. If in the opinion of that driver it is better than a collision, it is. A. Not if the other fellow is in the right lane of traffic. Q. But Mr. Ehrhardt made an attempt to pull to the right as he met you? A. That's right. Q. There is no question about it? A. There is no question about it."

He further testified on cross-examination that it looked to him as though Mr. Ehrhardt got scared coming up the pavement sideways and tried to straighten up and then came across the pavement and knocked the dual drivers from the Ruan truck. Scott, however, did not see that action. We have held many times that a mere scintilla of evidence is not sufficient to support recovery. Robson v. Barnett, supra, 241 Iowa 1066, 44 N.W.2d 382; Spaulding v. Miller, 220 Iowa 1107, 264 N.W. 8, and citations; In re Estate of Kenny, 233 Iowa 600, 603, 10 N.W.2d 73, 76.

■ There can be no doubt of the general rule that where reasonable minds might find from the evidence that a defendant was negligent in one of the respects alleged in the petition, such charge of negligence must be submitted to the jury. Hanson v. Manning, 213 Iowa 625, 629, 239 N.W. 793; Lorimer v. Hutchinson Ice Cream Co., 216 Iowa 384, 389, 249 N.W. 220; Townsend v. Armstrong, 220 Iowa 396, 400, 260 N.W. 17.

■ II. However, here it must be quite clear that the only testimony tending to prove that plaintiff had lost control of his vehicle was that he had attempted to turn to the right and get over onto the right shoulder of the highway when meeting the other vehicle. This is the very thing required of one when meeting another on the public highway, and especially so when there is danger of a collision. Failure to do so could result in a finding that one is guilty of contributory negligence. In plaintiff's effort here we find no substantial element of negligence, and certainly none that would justify its submission to the jury on the issue of lack of control.

We said in the case of Pazen v. Des Moines Transportation Co., 223 Iowa 23, 272 N.W. 126, that proper lookout means more than to look straight ahead, or more than seeing the object; that it implies being watchful of the movements of his own vehicle as well as the movements of the things seen; that it involves the care, prudence, watchfulness and attention of an ordinarily careful and prudent person under the circumstances.

Here again we find even less evidence to prove or tend to prove a lack of proper lookout, or a failure to exercise that degree of care, watchfulness and attention that an ordinarily prudent person would exercise under the circumstances. Ehrhardt's testimony was uncontradicted that he watched the other vehicle approach from one quarter of a mile away, watched the center line and noted the position of his truck as well as defendant's approaching truck; that he pulled to the right when he thought danger appeared in order to give a greater clearance between the passing vehicles. Even defendant Scott corroborated his close attention to the task at hand. This was all that the term "proper lookout" requires. Hartman v. Lee, 223 Iowa 32, 272 N.W. 140.

The crux of this case, we believe, is the question of which vehicle was on the wrong side of the center line at the time of the impact. Potter v. Robinson, 233 Iowa 479, 9 N.W.2d 457. We agree with plaintiffs' contention that the negligence, if any, which would have been the proximate cause of the injury and damage, would have been the failure to yield one half the traveled way by turning to the right.

In the case of Eclipse Lbr. Co. v. Davis, 196 Iowa 1349, 1355, 195 N.W. 337, 340, we said: "In a general way, it may be said that, to ascertain whether or not a thing complained of is the proximate cause of an injury, it is necessary to determine what was the thing amiss, either of omission or commission, without which the injury or loss would not have occurred."

If the jury believed defendant Scott that he was on his right and proper side of the traveled way, a conclusion he could not complain of, then the cause of his injury would be found in plaintiff Ehrhardt's encroachment upon his lane, which is in accord with the testimony Scott gave in the trial.

It is incredible, we believe, to say that Ehrhardt's negligence in failing to have his truck under control, or failure to keep a proper lookout, was the proximate cause of the collision, unless we also say that Ehrhardt was negligent in failing to yield one half the traveled way by turning to the right. When we remember there were only 16 feet for two passing trucks, one of which was at least 7½ feet wide and the other but little less, only a slight skid could have caused the crash. The jury could have found both or neither was negligent under these circumstances. That the elements played a great part in this accident there can be no doubt.

■ We must conclude, therefore, that the trial court was correct in its determination that the competent evidence submitted on lack of control and failure to keep a proper lookout by plaintiff was insufficient to submit to the jury the issues raised under defendants' specifications 7(c) and 7(d).

■ III. The contention was made by plaintiffs that no proper objection was made to the court's failure to submit and instruct the jury on defendant-counterclaimants' specifications of negligence 7(c) and 7(d) as required in rule 196, Rules of Civil

Procedure. It is true we have held such a blanket objection as raised by defendant-counterclaimants herein raises nothing for review. At best it is therefore doubtful if defendants' objections to the trial court to its failure to submit issues 7(c) and 7(d) and to instruct on them were sufficient to entitle defendants to consideration of the alleged errors based thereon. Clayton v. McIlrath, 241 Iowa 1162, 1168, 44 N.W.2d 741, 27 A.L.R.2d 307, and cases cited therein; Pond v. Anderson, 241 Iowa 1038, 1046–1049, 44 N.W.2d 372, and cited cases. In the case of Anthony v. O'Brien, 188 Iowa 802, 805, 175 N.W. 750, 751, Judge Ladd said, "* * * a party may not rely on a mere refusal to give an instruction, but must specify the grounds on which he predicates error in such refusal." It is true that the defendants did file in their motion for a new trial properly alleged grounds in support of their objections, but of course this was too late since no additional grounds may be urged after instructions are read to the jury. Rule 196, Rules of Civil Procedure. We prefer, however, to base our decision in the instant case on the ground that there was no error in the court's failure to submit and instruct on defendants' specifications 7(c) and 7(d), although it would appear that our decisions under rule 196 might be applicable here.

IV. Defendants also contend that the trial court erred in striking from the record and precluding from the consideration of the jury testimony of witness JoAnna Athey concerning alleged verbal admissions of plaintiff Ehrhardt made in her presence to a highway patrol officer investigating the accident. The court precluded the offered testimony of JoAnna Athey, a secretary for defendants' attorney, Jordan, who had been present and heard a conversation in the home of Ehrhardt between plaintiff Ehrhardt and a highway patrol officer who was there for the purpose of investigating the accident and making his report to the State Department. This was three days after the accident. Ehrhardt said he would sign nothing as he had filed a written report with his company and did not want to be questioned later on apparent inconsistencies, but he would gladly visit with them, meaning the officer, Jordan, and the secretary, JoAnna Athey. She took notes as the officer asked questions. There was some evidence Ehrhardt thought she was the officer's wife, but that is

immaterial here. The court correctly excluded this testimony under Code of 1939, section 5020.11, which is now section 321.271, Code of Iowa, 1950, and which provides as follows:

"All accident reports shall be in writing and the written report shall be without prejudice to the individual so reporting and shall be for the confidential use of the department, except that upon the request of any person involved in an accident, or the attorney for such person, the department shall disclose the identity of the person involved in the accident and his address. A written report filed with the department shall not be admissible in or used in evidence in any civil case arising out of the facts on which the report is based."

We have previously discussed the intent and purpose of former similar statutes and, though the wording has been changed slightly, their purpose and objects have not been materially altered. We have come to the conclusion that such statutes were enacted to enable the state authorities to obtain unbiased, honest and correct information from persons involved in accidents on our highways. Such information is deemed necessary to the Public Safety Department of the State, and is for the purpose of compiling statistics and facts to be used in highway safety programs for the public benefit. It is most important that it be accurate. It becomes evident that to obtain such information the source must be carefully guarded so that no prejudice will result to the informant, in either a criminal or civil action that may follow, due to his honest revelations and impressions expressed. McBride v. Stewart, 227 Iowa 1273, 290 N.W. 700; Vandell v. Roewe, 232 Iowa 896, 6 N.W.2d 295; Bachelder v. Woodside, 233 Iowa 967, 9 N.W.2d 464. It is true the wording of the statutes involved in those cases was different, and perhaps too much importance has been given to the exact words used therein. But without again reviewing the history of this legislation we hold the intention and meaning remains the same, viz., a privilege and protection to the informant. In many ways the present statute was made stronger. The requirement is that all reports shall be in writing, and the written report shall be without prejudice to the individual so reporting. In other words, all reports shall

be without prejudice to the informant and, with only the exception of the person involved and his address to ones involved or their attorneys, the report is for the confidential use of the Department of State. Information given an officer for the purpose of making his written report is a report and the report referred to in the statute. When such information is given in response to questions of an officer the informant is clothed with the protecting warrant by the state that the information cannot be used to his prejudice in any civil or criminal suit through testimony of the officer, an eavesdropper, bystander, or anyone else. The written report furthermore is not admissible in any suit. We further hold that this is not a privilege that may be waived by an informant, for its nature is not personal alone but also public. It is not a privilege similar to the privilege found in the doctor-patient, lawyer-client, clergy-layman relationship. The interest of the state in securing correct, truthful and accurate data for its use in administrative activities pertaining to safety on the highways justifies the subordinating of the interests of private litigants, and this paramount interest of the state should not be weakened by being subject to waiver by an individual. In Sprague v. Brodus, 245 Iowa 90, 60 N.W.2d 850, Justice Mulroney discusses this matter more in detail, and his views there are adopted herein.

Here, then, by coincidence, the lawyer, his secretary and the highway patrolman arrived at the Ehrhardt home at the same time. Most, if not all, the information given was in response to the officer's questions, and as he was there for the purpose of making the written report, none of the disclosures made then and there could be used to Ehrhardt's prejudice in any civil trial. The court was correct in excluding the testimony of the secretary, and there being no reversible error the case is affirmed. —Affirmed.

HAYS, C. J., and BLISS, OLIVER, GARFIELD, WENNERSTRUM, and SMITH, JJ., concur.

THOMPSON, J., concurs in result.

MULRONEY, J., specially concurs.

MULRONEY, J. (specially concurring)—I concur in all but

204

Division III of the foregoing opinion. In that division of the opinion some doubt is cast on the sufficiency of the objection to the instructions made by plaintiff.

The record shows the defendants and counterclaimants made the following objections to the instructions:

"Comes now the defendants and each of them and the counterclaimants and each of them and object to the Court's failure to include in the statement of the issues counterclaimants' specification of negligence 7c reading as follows: 'In failing to keep control of their equipment under the conditions then and there existing, including the condition of the highway at the point of meeting.'

"(2)   The counterclaimants and each of them object to the Court's failure to include in the issues counterclaimants' allegation of negligence 7d reading as follows: 'In failing to keep a proper lookout at or about the time of meeting on said highway in view of the conditions then and there existing.' "

Rule 196, R.C.P., provides in part: "* * * all objections to giving or failing to give any instruction must be made in writing or dictated into the record, out of the jury's presence, specifying the matter objected to and on what grounds."

It seems to me the objection made is substantial compliance with our rule. It specifies the portion of the instructions objected to as the "statement of the issues", an unnumbered part of the instructions in this case. It objects to this portion on the ground that it fails to include certain pleaded specifications of negligence, which are set forth in the objections. I think it specifies "the matter objected to": the submission of issues, and "on what grounds": because it fails to include pleaded specifications. The majority opinion does not say what more should be added but about all I can think the objector could add would be a statement that there was evidential support for these specifications. Such a statement would add nothing by way of pinpointing the exact grounds for it is obvious that is all that could be urged when the court fails to include a pleaded specification. I cannot believe the majority means to infer the objection, which counsel must make under some pressure after he receives the preliminary

draft, must detail the evidence which he contends would warrant the submission of the issues.

In Dakovich v. City of Des Moines, 241 Iowa 703, 710, 42 N.W.2d 511, 515, we held an exception to omission of a speed instruction sufficient. About all that was added to the exception in that case, that is not present in the exception here, is a general statement to the effect that the "physical facts as disclosed by the evidence" warranted such submission.

The cases where there is a requested instruction with no grounds urged are not in point. Dakovich v. City of Des Moines, supra. Here, there were specific objections directed to certain "matter", namely, the statement of issues. I think it would be too technical to hold the grounds stated were insufficient.