[File No. 6379.]

FLORENCE M. HAUSKEN, Respondent, v. L. R. COMAN and Northwest Construction Company, a Corporation, Appellants.

(268 N. W. 430.)

634

Opinion filed April 27, 1936.   On Rehearing July 16, 1936.

*Conmy & Conmy,* for appellant.

*Murtha & Murtha,* for respondent.

BURKE, Ch. J.   This is an action for personal injury.   From a judgment in favor of the plaintiff the defendants appeal.

The complaint alleges that on the 6th day of November, 1934 Hans Jacob Hausken, the husband of the plaintiff, was lawfully, and with the exercise of due care, proceeding on foot upon that certain highway known as U. S. Highway No. 10, at a point thereon at the easterly edge of the city limits of the city of Glen Ullin, North Dakota, crossing from the south to the north thereon and being about 8 feet from the northernmost edge of said highway, which highway at this point runs east and west.   The said L. R. Coman at said time and place aforesaid and while acting as agent, employee, and servant of the defendant corporation aforementioned and while transacting their business as aforesaid, and while in charge of and driving the said automobile as aforesaid, then and there operated, drove, and managed the said automobile in a careless, negligent, and wanton manner, so that the same was violently propelled against the said Hans Jacob Hausken causing the said car to collide with the said Hans Jacob Hausken and causing the

said Hans Jacob Hausken to be violently struck and killed as the result of said collision and negligence of said L. R. Coman.

The answer admits that the defendant Construction Company is a corporation and denies generally every other allegation in the complaint and specifically denies that plaintiff's husband was injured because of defendants' negligence and alleges the fact to be that his said injury was occasioned by the said negligence of plaintiff's husband and his own negligence contributed thereto.

It is conceded that the defendant Coman, at the time of the injury, was acting for and on behalf of the defendant Construction Company, a corporation.

On the morning of the 6th of November, 1934 the defendant was driving his automobile on highway No. 10, approaching the city of Glen Ullin from the west. There is a dispute over the width of highway No. 10 in the city of Glen Ullin, but the defendant introduced in evidence a photograph, Exhibit 1, which is conceded to be a photograph of the street where the accident occurred in the city of Glen Ullin at the time of the accident, except that the automobile between the pumps and the Standard Oil Filling Station was not there at that time; that space being unoccupied. From this photograph, (which we include herein,) it appears that there are no gutters and the entire space between the curbs was used as a public highway.

Subdivision (n) of § 1, chapter 162, Session Laws of 1927, the Uniform Motor Vehicle Act, defines "highway" as "Every way or place of whatever nature open to the use of the public, as a matter of right, for the purposes of vehicular travel. The term 'highway' shall not be deemed to include a roadway or driveway upon grounds owned by private persons, colleges, universities or other institutions." Subdivisions (s) of § 1 of said chapter defines "business district" as "The territory contiguous to a highway when fifty per cent or more of the frontage thereon for a distance of three hundred feet or more is occupied by buildings in use for business."

There was no attempt to show by direct evidence that the accident happened in a business district, but the evidence does show three oil stations, a mill and elevator, and restaurant and the photograph shows a number of business houses to the east.

The defendant came from the west. Joe Gietzen, testifying for the

plaintiff, said that he was at the Texaco Filling Station on the north side of the street (not shown in the photograph) and west of where the accident happened. "I judge that Coman was traveling about 30 miles an hour when he passed the filling station. When Mr. Coman was about 75 or 80 feet from Mr. Hausken he honked his horn. The road at that point was about 60 feet wide. Coman at that time was about 10 or 12 feet from the north side of the road. Mr. Coman stopped as quick as he could stop. I should say the skid tracks turned slightly to the right, extending all the way to the car. At the point where Hausken and Coman met it was about 13 or 14 feet to the north edge of the road from the car tracks closest to the north. When the car stopped it was on the right hand side of the street, right in front of the roller mill, mostly on the right side of the road, just straddling a little. When Mr. Coman honked his horn Mr. Hausken jumped back about three steps, I believe 8 or 9 feet.

"Q. What part of the car hit Hausken?

"A. More to the left side of the car, the bumper. . . .

"Q. Do you know whether or not there is a roadway or place where vehicles have or can pass to the west of these roller mills and near the point of this accident? . . .

"A. . . . It is not what you call an alley or street, it is a common pass way.

"It is about 70 or 80 feet from the point where the skid tracks began to where Mr. Hausken was hit. At the time of the accident I was standing at the Texaco Filling Station. It was 150 or 160 feet from where I was standing by the filling station to where the accident happened. The driveway to the Standard Oil Filling Station is about thirty feet wide. When Coman honked the horn Hausken had about three steps to go across and he turned back. He was going kitty cornered in a northeasterly direction. When he heard the horn blow he jumped up, threw his head around, looked west and east and then stepped back as fast as he could make it and ran right in front of the car. If Hausken had not stepped back he would not have been hit. The highway is wider where the accident happened on account of the approach to the Standard Oil pumps. Hausken came from the west and walked north to the pump. He came along on the south side of the street walking up on the north side of the pumps where the

opening is between the pumps and that building and there he turned to cross going east until he got even with the filling pump, a little farther and then he turned across the street. He walked until he had about three steps to go and then the horn blew and he backed up about three steps and that is when he got hit.

"Q. The left side of the car hit him?

"A. Yes.

"The car hit him and he fell over backwards. There was no other car on the highway. Mr. Coman's car was stopped mighty quick, just as quick as anybody could. I saw Hausken start across the road. He continued to walk across.

"Q. Apparently he didn't see the car, hadn't looked. You didn't see him look?

"A. No, he walked straight on.

"Q. Didn't realize the car was coming at all?

"A. No.

"Q. That was clear to you, wasn't it?

"A. Yes.

"Q. Because when he heard the horn blow he jumped up kind of?

"A. Yes, he threw his head around, looked west and east and then stepped back, just as fast as he could make it.

"Q. And ran right into the front of it?

"A. Sure."

He testifies, first, that Coman was coming about thirty miles an hour by the Texaco Filling Station. Later, thirty-five miles an hour and he thought he was going about thirty miles an hour at the time he struck Hausken. The testimony as to speed was an estimate, but it is clear from this testimony that he saw Hausken walking east on the south side of the street; that when Hausken approached the Standard Oil Filling Station he passed in front of and to the north of the pumps and started diagonally across the road without looking either way.

Mr. Coman, the only other eyewitness, testified: "The brakes on my car were in first class condition. I was traveling in the center of the road and there was one beaten track. It was very noticeable, and it was about the center of the road. It was a gravel road and the cars had been traveling there all night, and they had this one prominent

track, and that is the one I was traveling on. As I got by the filling station (Texaco) I noticed Mr. Hausken crossing the road. I started to turn out. I did turn out to the right and figured on going around him, and the man appeared like he was in deep thought and was kind of going in a northeasterly direction, so I blew my horn and that seemed to startle him and he turned toward the car and run back in the direction he came from. When I sounded the horn I was 75 feet, possibly 100 feet from Hausken. He didn't turn immediately, he kind of threw up his hands like he was startled, and then turned and run back. When I seen there was a possibility of hitting him, I threw the brakes on and turned a little bit more. I would say I was 25 feet from him when I put on the brakes. When he started back he was facing south and a little west, that is when he started back across the road. He was traveling in a northeasterly direction, not straight across. I blew the horn and when he got startled and started to run back I naturally threw my brakes on and turned a little bit more. There was a pump or something in the road, and, of course, there was kind of a question of whether I was going to hit the pump or hit him. That is about all there was to it. He run into the front end of the left fender and he was knocked down. I would say that the front end of the car was about east of the single pump in front of the elevator or office of the elevator. The front fender hit him somewhere on the right side; that is what knocked him down. I was going about 25 miles an hour when I passed the Texaco Filling Station. I had taken my foot off the gas and set it on the brake pedal and was going possibly 20 miles an hour. I would say I was going 5 or 10 miles an hour when Hausken was struck. He wasn't looking in my direction. He turned to the left and he never looked directly right or left, he looked right back the way he was coming from. He couldn't have seen me. I was 75 feet when I honked the horn. I did put the brakes on a little and then put them on hard when I was 25 feet away from him. When I saw he was going to run into the car I did everything in my power to avoid the accident. I put the brakes on just as hard as I could and skidded 20 or 25 feet. I didn't have any idea he was going to run into the car. I did make an effort to change my course, slanted to the southeast. He was almost across the street. I did put the brakes

on a little when I honked the horn and when I was 25 feet away I put them on hard and when I saw he was going to run into the car I put them on as hard as I could and locked the wheels and skidded."

On cross examination Coman is asked:

"Q. . . . isn't it true that to the right there is a drive way about forty or fifty feet wide that you could have turned off into?"

Objection to this was overruled.

"A. I don't know as to that.

"Q. You didn't look?

"A. No, sir.

. . .

"Q. . . . Did the honking of the horn seem to startle the man?

"A. Yes, sir.

"Q. And he started to jump back toward the middle of the street?

"A. Yes.

. . .

"Q. The horn startled him?

"A. That is what I would say.

"Q. Then he jumped back? . . .

"A. He kind of threw up his hands first and turned, kind of pivoted to the left.

. . .

"Q. . . . When you honked your horn the man became startled?

"A. That is right.

"Q. That is what startled him, the honking of the horn?

"A. Yes.

"Q. As a matter of fact you told that to Mr. Muggly after the accident? . . .

"A. I don't know if I told that to Mr. Muggly, I made the statement that I was satisfied that if I hadn't blown the horn the man would have kept going.

"Q. When you honked the horn the man was 75 feet away, the man immediately became startled and turned toward you but didn't look at you, you know that, do you?

"A. Yes, sir."

This cross examination, by plaintiff's attorney, was clearly for the

purpose of showing that the sounding of the horn startled Hausken, and likewise the cross examination of the witness Gietzen, by the defendant's attorney, was for the same purpose, that is, to show that the sounding of the horn startled Hausken. It is admitted by the defendant and is clearly proven by two eyewitnesses.

There is some testimony that skid marks showed a distance of 75 feet from the automobile.

Appellants claim that there is no proof of negligence on the part of the defendants; that the only claim of negligence alleged is that the defendant Coman "operated, drove and managed the said automobile in a careless, negligent and wanton manner so that the same was violently propelled against the said Hans Jacob Hausken causing the said car to collide with the said Hans Jacob Hausken and causing the said Hans Jacob Hausken to be violently struck and killed." There is no claim in the complaint that there was any specific act of negligence, other than at the time of the injury Coman operated the machine in a careless, negligent, and wanton manner and that such careless, negligent, and wanton manner of operating the machine caused the said Hans Jacob Hausken to be violently struck. In other words, the careless, negligent, and wanton manner in which the machine was operated at the time of the injury was the proximate cause of the collision which resulted in the death of Hausken.

At the trial objection was made to an attempt, on the part of the plaintiff, to show the speed at which Coman was driving when he appeared from the west, driving east, on the ground that there was no specific allegation of speed as required by paragraph 8 of § 4 of chapter 158 of the Laws of 1931. Whereupon counsel for the respondent moved that the complaint be amended so as to include "negligent and wanton manner and at an unlawful rate of speed." The motion was granted over the objection of the appellants. The complaint was never rewritten with the amendment included and appellants assign the failure to redraft the complaint with the amendment as error. "The mode of amending pleadings recognized by the practice of this state is by rewriting the pleadings, leaving out such allegations, and inserting such other allegations, as may be desired, so that all parts of the pleadings shall be in one instrument, complete in itself. The mere granting of leave to amend a pleading does not amend it.

Unless the leave is acted upon and the pleading redrawn, including the desired change, the amendment is deemed abandoned." Satterlund v. Beal, 12 N. D. 122, 95 N. W. 518; Caledonia Gold Min. Co. v. Noonan, 3 Dak. 189, 14 N. W. 426; Clark v. Ellingson, 35 N. D. 546, 161 N. W. 199.

The amendment, if allowed, would add to the complaint the phrase "at an unlawful rate of speed" and would charge the defendant Coman with "managing the automobile in a careless, negligent, wanton manner and at an unlawful rate of speed so that the same was violently propelled against the said Hans Jacob Hausken." The negligence of the defendant is limited to the management of the automobile at the time of the collision; that is, it was carelessly, wantonly and at an unlawful rate of speed propelled against Hausken. (The amendment, if allowed, would not add much to the complaint, but since the complaint was not redrawn, including the amendment, it must be deemed to be abandoned.)

Paragraph 8 of § 4 of chapter 158, Session Laws 1931, (relating to restrictions as to speed), the Uniform Motor Vehicle Act, regulating the operation of vehicles does provide, as appellants contend, "In every charge of violation of this section the complaint shall specify the speed at which the defendant is alleged to have driven, also the speed which this section declares shall be prima facie lawful at the time and place of such alleged violation." This is a criminal statute and does not apply to the pleadings in a civil action.

In the case of Piner v. Richter, 202 N. C. 573, 163 S. W. 561, the North Carolina court, construing this section of the Uniform Motor Vehicle Act, held that it was a criminal statute and did not apply to the complaint in a civil action.

Appellants concede that the complaint, in the instant case, states a cause of action; but claim that the cause of action is limited to the specific charge of negligence in operating the automobile at the time of the collision and it seems to be well settled that "If the plaintiff relies upon the nonperformance of statutory obligation or duty, he must allege all the facts under the statute to create the duty and to bring his case within its terms. But inasmuch as the court is bound to judicially notice the statutes of the state, it is not necessary to plead or refer to the statute relied upon as creating a duty." 4 Bancroft, Code

Pleading, § 2039; Ball Ranch Co. v. Hendrickson, 50 Mont. 220, 146 P. 278, 8 N. C. C. A. 943. "One relying on a general statute need plead only the facts bringing his case within the rule of the statute." 1 Bancroft, Code Pleading, § 68; Anderson v. Pantages Theater Co. 114 Wash. 24, 194 P. 813. "Where the action is under the statute, facts showing violation of the statute, and not the statute itself, must be pleaded." Babbitt, Motor Vehicle Law, 4th ed. § 2168, page 1564; Leideck v. Chicago, 248 Ill. App. 545. "Where the breach of duty or negligence arises out of the violation of duty imposed by statute or municipal ordinance, such breach of duty or negligence must be properly alleged. And the complaint should show that the violation of the statute or ordinance had causal relation to the injury complained of. . . . (but) the statute itself need not be pleaded." 15, 16 Huddy, Enc. Auto. Law, § 113, pages 213, 214; Houston Oil Co. v. Wilson (Tex. Civ. App.) 70 S. W. (2d) 285.

Appellants contend that the instruction given as follows was error: "The law out of regard to the instinct of self-preservation, will presume, prima facie, that a person who has suffered death by accident was, at the time, in the exercise of ordinary care and diligence, and this presumption is not overcome by the mere fact of the accident. This is, however, a rebuttable presumption and may be overcome by proof that he was negligent."

In this case two eyewitnesses testified fully on the conduct of Hausken at the time of the collision, and it seems to be well settled that "Where there is an eyewitness to an accident, issue of due care rests upon proof, not upon presumption, and this is so even if the eyewitness is the adverse party." Foote v. Huestler, 272 Mich. 194, 261 N. W. 296. Where the circumstances of automobile collision are fully testified to the jury should determine the cause on the testimony and not on the presumption that one party obeyed the law. In the case of Hatzakorzian v. Rucker-Fuller Desk Co. 197 Cal. 82, 239 P. 709, 41 A.L.R. 1027, the California court said that in the absence of evidence to the contrary a pedestrian, while walking on a highway, is presumed to have exercised at all times the requisite degree and amount of care for his own safety. Citing Code of Civil Procedure, § 1963, subd. 4; Crabbe v. Mammoth Channel Gold Min. Co. 168 Cal. 500, 143 P. 714; Cogdell v. Wilmington & W. R. Co. 132 N. C. 852, 44

S. W. 618; Shannon v. Delwer, 68 Minn. 138, 71 N. W. 14; Pomeroy v. Dykema, 256 Mich. 100, 239 N. W. 342.

Subdivision 4, § 1963, of the Code of Civil Procedure of California is identical with subdivision 4, § 7936, of the Code of Civil Procedure of North Dakota relating to presumptions, and reads as follows: "That a person takes ordinary care of his own concern." The rule is that in case a person is killed and there is no witness, the presumption is that he was not negligent. Kunkel v. Minneapolis, St. P. & S. Ste. M. R. Co. 18 N. D. 367, 121 N. W. 830. But where there are witnesses, as in the instant case, there is no presumption and the giving of the instruction was error.

In the case of Patt v. Dilley, 273 Mich. 601, 263 N. W. 749, the Michigan court said: "Only in the absence of testimony relative to the facts may the presumption be employed. When the facts are disclosed or in issue under testimony, it is error to consider the presumption as evidence of negligence and place the burden on the defendant to rebut the presumption. . . . Presumptions cannot be weighed against evidence, for they fade out in the light of evidence, no matter how contradictory the evidence." See, Rassmussen v. McEachron, 274 Mich. 200, 264 N. W. 342.

At the close of plaintiff's testimony the defendant moved to direct a verdict in its favor for dismissal of the action on the ground and for the reason "first, there is no testimony showing any negligence on the part of the defendant proximately causing the loss and injury in question. Secondly, the undisputed testimony shows plaintiff's decedent to have been guilty of contributory negligence as a matter of law. Third, there is no proper proof of damages." This motion was overruled and at the close of all of the testimony the defendants made the following motion, "Mr. Conmy: At this time, the plaintiff and defendant having rested, the defendants renew their motion made at the close of the entire case with all its force and effect. I would like to have the record show that this motion is made separately on behalf of each of the defendants." The motion was overruled, and the overruling of said motions are assigned as error. (Specifications 29 and 30.)

There is no dispute about the manner or conduct of Hausken in crossing the street. The testimony shows that he walked down the

south side of the street with his dinner pail under his arm. Just before he reached the pumps at the Standard Oil Filling Station he turned north and started diagonally across the street without looking either way.

The town of Glen Ullin is a small town; but highway number ten is a national highway upon which there is a great deal of traffic. At that time of morning there was no one on the highway but the defendant and Hausken, and as a matter of course it would not require as high a degree of care as if it had been in a crowded city street; but it did require some care on the part of Hausken.

In the case of Clark v. Feldman, 57 N. D. 741, 750 & 751, 224 N. W. 167, this court had under consideration subdivision (c), § 18, chapter 162, of the Session Laws of 1927 (Uniform Motor Vehicle Act), which gives the pedestrian the right of way at intersections and further provides: "Every pedestrian crossing a highway within a business . . . district at any other than a pedestrian crossing, crosswalk or intersection shall yield the right of way to vehicles upon the highway." After reviewing the authorities at considerable length this court quotes with approval the following from the case of Johnson v. Johnson, 85 Wash. 18, 147 P. 649, namely: " 'If the conceded right of way means anything at all, it puts the necessity of continuous observation . . . upon the driver of the automobile when approaching a crossing just as the necessity of the case puts the same higher degree of care upon the pedestrian at other places than at crossings.' " See, Pederson v. O'Rourke, 54 N. D. 428, 209 N. W. 798; Olsen v. Peerless Laundry, 111 Wash. 660, 191 P. 756; Jurisch v. Puget Transp. Co. 144 Wash. 409, 258 P. 39; Knapp v. Barrett, 216 N. Y. 226, 110 N. E. 428. Continuing the court said: "The rule is 'that whenever the plaintiff's case shows any want of ordinary care under the circumstances, even the slightest, contributing in any degree, even the smallest, *as a proximate cause* of the injury for which he brings his action, his right to recover is thereby destroyed.' Beach, Contrib. Neg. 3d ed. § 35."

The witness Gietzen's attention was attracted to the coming of the defendant Coman by the sound of his automobile as it approached the Texaco Filling Station. Witnesses White and Grewer also saw the defendant's car as it passed said filling station.

Gietzen saw Hausken walk east on the south side of the highway and as he approached the Standard Oil Filling Station he turned diagonally across the highway and did not look either way until Coman sounded the horn, then he became startled and ran back a distance of nine feet and was struck by the north end of the bumper, or the fender, on the defendant's car. He was in a place of safety at the time the horn was sounded and it is conceded that if he had kept going or had remained where he was when the horn was sounded he would not have been struck. Hausken was thirty-seven years of age at the time, a section foreman on the railroad, a supervisor of men, in full possession of all of his faculties, good eyesight and good hearing according to the testimony of the plaintiff. It was daylight, and the defendant and Hausken had the exclusive use of the street at the time.

2 Cal. Jur. Supp. p. 379, § 244, states the rule as follows: "Where the injured party fails to look at all, or looks straight ahead without glancing to either side, or is in a position where he cannot see, or in other words, where he takes no precaution at all for his own safety, it is usually a question for the court." Rapp v. Southern Serv. Co. 116 Cal. App. 699, 4 P. (2d) 195; Wickman v. Lowenstein, 136 Cal. App. 279, 283, 28 P. (2d) 681; White v. Davis, 103 Cal. App. 531, 284 P. 1086; Jones v. Davies, 133 Cal. App. 389, 24 P. (2d) 364. See, also, Welch v. Wirsching, 127 Cal. App. 725, 16 P. (2d) 691; McVea v. Nickols, 105 Cal. App. 28, 286 P. 761. It is the duty of a pedestrian traveling in public streets, reasonably to exercise for his personal safety the faculties with which he is endowed by nature for self-protection, and a person is not entitled to walk the streets with closed eyes and inattentive mind. 2 R. C. L. p. 1186. See extensive note in 79 A.L.R. 1076.

It is clear that Hausken was negligent in crossing the street; but if such negligence was not a proximate cause of the injury it would not be material. During the very time that he was negligent he crossed the street into a place of safety and would have continued safely on his journey if the defendant had not sounded his horn.

The facts in the instant case are very much like the facts in the case of Wall v. Merkert, 166 App. Div. 608, 152 N. Y. S. 293. In that case the chauffeur of defendant's automobile, which was proceeding up First Avenue on the north-bound track, sounded his horn. The deced-

ent threw up his hands, took one or two steps back towards the east and upon the north-bound track, in front of the automobile, and was instantly hit by the left front edge thereof, thrown down and killed. He was hit while in the act of stepping back upon the north-bound track. The court said:

"Accepting the plaintiff's version of the accident, as did the jury by its verdict, the judgment cannot be sustained. The decedent had reached a place of safety and suddenly stepped backward in the path of the automobile. The ground upon which the recovery is sought to be sustained is that the decedent was placed in a position of danger by the negligent blowing of the automobile horn. In the charge the learned court said to the jury: 'It is claimed by the plaintiff that this man had safely crossed the north-bound track, when, excited or disturbed or frightened by the sound of this Klaxon horn, instead of stepping forward he stepped back onto a point between the rails of the north-bound surface railroad track; that then, in stepping forward again, in order to go west, he was struck by what would be the north east part of the car;' and again he said: 'Was this man, having gotten in a position of safety, frightened by the automobile horn so that he stepped back one step, and then in stepping forward, before he could get out of the way was run down by the negligence of the employee of the defendant?' At the close of the charge a juror asked: 'Is there any law in the case where a horn is blown and a person gets excited and steps back—is there any law on that subject?' The court: 'I will charge you this way: That man had a right to be upon that street for the purpose of crossing; if he stepped back, as a consequence of some reckless act upon the part of some other person, and if as a consequence of that he was injured, then the defendant would be responsible for the injury sustained, for the death in this case.'

"The learned counsel for the respondent in his brief states: 'We have been unable to find any cases in this State holding that the blowing of a horn under such circumstances is a negligent act.' It is provided in chapter 374 of the Laws of 1910, . . . that every motor vehicle shall be provided with 'a suitable and adequate bell, horn or other device for signaling,' and subdivision 2 provides: '. . . Upon approaching a pedestrian who is upon the traveled part of any highway and not upon a sidewalk, and upon approaching an intersecting high-

way or a curve or a corner in a highway where the operator's view is obstructed, every person operating a motor vehicle shall slow down and give a timely signal with his bell, horn or other device for signaling.'

"It has been held in innumerable cases that a failure to observe an ordinance or a statute is evidence of negligence. This is the first case that has been brought to our attention where obedience to an ordinance or statute is made the ground of a recovery for negligence."

But the New York statute, namely, subdivision 2, chapter 374 of the Laws of 1910, § 286, Supplement to New York Laws for 1910, relating to signaling and other devices, signal rules of road, brakes, horns, and lamps, is quite different from subdivision (a) of § 45 of chapter 162, as amended by chapter 183 of the Session Laws of 1931. Section 45, as amended, being identical with § 71 of the Uniform Motor Vehicle Act, which reads as follows:

"Section 45. Horns and Warning Devices. (a) Every motor vehicle when operated upon a highway shall be equipped with a horn in good working order capable of emitting sound audible under normal conditions from a distance of not less than two hundred feet, and it shall be unlawful, except as otherwise provided in this section, for any vehicle to be equipped with or for any person to use upon a vehicle any siren, exhaust, compression or spark plug whistle or for any person at any time to use a horn otherwise than as a reasonable warning or to make any unnecessary or unreasonably loud or harsh sound by means of a horn or other warning device.

"(b) Every police or fire department and fire patrol vehicle and every ambulance used for emergency calls shall be equipped with a bell, siren or exhaust whistle of a type approved by the registrar. Every vehicle operated by a Sheriff or his deputies shall be equipped with a bell, siren or exhaust whistle of a type approved by the registrar, said bell, siren or exhaust whistle to be paid for by the county."

The whole section was amended and re-enacted by chapter 183, Session Laws of 1931; but subdivision (a) of said § 45 was not changed. The amendment was to subdivision (b) of said section; so that while the whole section was amended and re-enacted subdivision (a) remains as it was in the Uniform Motor Vehicle Act.

Section 17 of chapter 162, Session Laws 1927 (the Uniform Motor Vehicle Act), provides: "The driver of any vehicle upon a highway

before starting, stopping or turning from a direct line shall first see that such movement can be made in safety and if any pedestrian may be affected by such movement shall give a clearly audible signal by sounding the horn."

There is one provision in this Uniform Motor Vehicle Law not found in the New York statute and upon which we have been unable to find any decision, viz.: "It shall be unlawful . . . *for any person at any time to use a horn otherwise than as a reasonable warning or to make any unnecessary* or unreasonably loud or harsh sound by means of a horn or other warning device." (Italics are ours.) There is no proof in the instant case that it was the kind of a horn prohibited by law or that it was an unreasonably loud or harsh sound; but it seems to be the intent of the law that the horn should not be sounded when unnecessary, and should not be used otherwise than as a reasonable warning.

The jury in the New York Case was, apparently, impressed with the claim that the sounding of the horn was negligence. After the trial judge had concluded his instructions, a juror asked: "Is there any law in the case where a horn is blown and a person gets excited and steps back—is there any law on that subject?" And in the absence of a statutory provision, the court's answer was held error; but in this state there is a specific statute making it unlawful for any person at any time to use a horn otherwise than as a reasonable warning. This statute is intended to protect pedestrians and persons in the street who might be frightened and confused into danger by the unnecessary sounding of a horn otherwise than as a reasonable warning.

In the instant case both parties introduced testimony, without objection, to prove that the sounding of the horn startled Hausken. The plaintiff for the purpose of showing that the sounding of the horn was negligence on the part of the defendant, and the defendant for the purpose of proving that Hausken did not exercise any care in crossing the street or he would have known that an automobile was coming, and the sounding of the horn would not have startled him. The sounding of the horn was not necessary. Hausken was in a place of safety when the horn was sounded. The defendant admits that if he hadn't sounded the horn Hausken would have kept on going across the road, and Gietzen testified that two or three minutes after the accident the defendant said: "That is one time I shouldn't have honked the horn.

I would have avoided an accident. When I honked the horn he stepped back one or two steps and I turned in the same direction and I hit him." There was an objection to this testimony, and the overruling of the objection is specified as error. It was not error; but if it was the error was cured by the admission, without objection, of so much testimony relating to the blowing of the horn and the effect it had on Hausken.

The questions to determine are: Was the sounding of the horn necessary, and was the horn used at said time otherwise than as a reasonable warning? If the horn was used, at said time, otherwise than as a reasonable warning, then it was unlawful, and the defendant would be liable for any damage proximately caused by such unlawful act. Second, did the sounding of the horn place Hausken in an apparent situation of sudden or imminent danger without his own fault? If it did he would not be guilty of contributory negligence if he acted on the appearance of danger which did not in fact exist, or if he failed to make the most judicious choice between the expedients which the situation presented for seeking safety, or because he might have escaped injury had he acted differently. Babbitt Motor Vehicle Law, § 1476. If the defendant places a man in a situation that he must adopt a perilous alternative, he is responsible for the consequences. On the other hand, if the plaintiff's act resulted from a rash apprehension of danger which did not exist, and the injury which he sustained is to be attributed to rashness and imprudence, he is not entitled to recover. If the plaintiff adopts an unsafe course which is a natural result of the fright and bewilderment caused by defendant's negligence, and such as might occur to one acting with ordinary prudence, the defendant cannot set this up as a bar to recovery, for it would be like permitting one to take advantage of his own wrong, as where plaintiff, in an emergency created by the defendant, leaps in front of an automobile. Porter v. Fleming, 104 Vt. 76, 156 A. 903. When one is placed by the negligence of another in a situation of peril, his attempt to escape danger, even by doing an act which is in itself dangerous, and from which injury results, is not contributory negligence, such as will prevent him from recovering. Babbitt Motor Vehicle Law, § 1477.

If the jury should find that the negligence of Hausken, in crossing the street, created the emergency and contributed to the injury, then the plaintiff would not be entitled to the emergency instruction; but

in such case it would not be error to refuse to direct a verdict for the question of the last clear chance is in the case, and the negligence of the injured person will not bar recovery if it is shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the plaintiff's negligence.

Appellants claim that Hausken had the benefit of the last clear chance doctrine, which, it is claimed, was not an issue under the pleadings. It was argued to the jury and the jury, no doubt, considered it without the benefit of the instructions of the court. This court has held that "the. doctrine of discovered peril, or of the last clear chance, may be urged under a general allegation of negligence." Welch v. Fargo & M. Street R. Co. 24 N. D. 463, 140 N. W. 680. If such doctrine may be urged under a general allegation of negligence it would seem that it might also be urged under a specific allegation "that at the time and place of the accident the automobile was managed in a careless, negligent, and wanton manner so that the same was violently propelled against the said Hans Jacob Hausken." The specific carelessness is in the driving of the automobile at the time of the accident and if the defendant could at said time, by the exercise of ordinary care, have avoided the collision by swerving the car to the south, or into the driveway between the mill and the filling station, or by stopping the car, it was his duty to do so.

As stated in the case of Eaton v. Ambrose, 133 Me. 458, 180 A. 353, "The supreme rule of the road is the rule of mutual forbearance. . . ." See, Acton v. Fargo & M. Street R. Co. 20 N. D. 434, 129 N. W. 225. In the latter case the doctrine of the last clear chance is discussed at length.

In the case of Spaulding v. Miller, 220 Iowa, 1107, 264 N. W. 8, at page 9, the Iowa court said: "We have held that where it is alleged that the negligence complained of existed down to the very time of the accident and injury without any further allegation that the question of 'last clear chance' is in the case, an instruction under such circumstances on that doctrine is proper." Cahill v. Chicago, M. & St. P. R. Co. 143 Iowa, 152, 121 N. W. 553. In the instant case it is specifically alleged that the negligence was at the very time of the accident. We hold that the doctrine of the last clear chance may be urged under

the allegations of the complaint, but we think the better practice is to plead it specially.

The term "discovered peril," "last clear chance," or "the humanitarian doctrine" does not appear in the record, but the plaintiff was permitted to show that the street was a very wide street; that there was a street between the mill elevator and the Standard Oil Filling Station forty feet wide and it was argued to the jury that the defendant could have turned to the south or into the said side street and have thus avoided the accident. This is the doctrine of the last clear chance and it doesn't make any difference what it is called in the record. [A defendant who, by ordinary care, has the last clear chance to avoid the accident, notwithstanding the previous negligence of the plaintiff, is solely responsible.] Trowbridge v. Briggs, 140 Cal. App. 554, 35 P. (2d) 426; Girdner v. Union Oil Co. 216 Cal. 197, 13 P. (2d) 915; Center v. Yellow Cab Co. 216 Cal. 205, 16 P. (2d) 918; Anderson v. Walters, 135 Cal. App. 380, 27 P. (2d) 100; Poncinco v. Reid-Murdock & Co. 136 Cal. App. 223, 28 P. (2d) 932; Babbitt, Motor Vehicle Law, pp. 1069, 1070.

Maine had not adopted the Uniform Motor Vehicle Law when the decision in the case of Gravel v. LeBlanc, 131 Me. 325, 162 A. 789 was written. In that case the court said: "Sounding a warning signal—where there is no apparent necessity of such warning, and the obligation to give such signal is not imposed by statute—does not . . . constitute negligence." But the court does say: "This, however, might present a jury question, in view of the claimed admission of defendant, of knowledge of the presence of the plaintiff on the running board. Defendant, it was in evidence, after 'tooting his horn,' continued at unslackened speed, in the center, or to the right of the center of the highway. Defendant's express statement, on the stand, was that plaintiff suddenly and unexpectedly appeared in the road, two feet in front of defendant's right mudguard, by jumping from the running board of the stationary vehicle, or passing in front of it; that no other car than defendant's was occupying the road; that defendant did not, when plaintiff was first seen, nor afterward to the time of the accident, change the course of his car.

"The jury could validly deduce from the evidence that, though plaintiff, when defendant first saw him, was in the road, and though de-

fendant might not have had space to stop his machine, still he might have swerved it to the left, so as to avoid collision. Unlike a street car, the automobile was not moving on a fixed track."

"Whether a person had or had not a reasonable basis for his conclusion and act, and whether he acted in a sudden emergency, are usually questions for the jury, although an extreme case may be determined by the court, but usually the question of what was best to be done in a moment of sudden peril, or whether an act done in such a moment is negligence, or whether sudden peril existed so as to excuse the act, is for the jury. So, whether plaintiff was guilty of contributory negligence in case of sudden peril or emergency is, ordinarily, for the jury and cannot be determined as a matter of law." Babbitt Motor Vehicle Law, § 1491, p. 1067, citing California, Connecticut, Iowa, Kentucky, Maine, Massachusetts, Michigan, Minnesota, Missouri, North Carolina, Ohio, Oklahoma, Oregon, Rhode Island, South Carolina, Vermont, Washington, and Wisconsin.

The doctrine of the last clear chance is an exception to the contributory negligence rule, and the burden of proof is upon the plaintiff; but the questions as to whether the driver could have stopped, or by the exercise of due care could have avoided the collision, after discovering the plaintiff, whether the defendant saw or could have seen the plaintiff in time to stop, whether he could have avoided the accident by swerving his car to the right or to the left, and whether the subsequent negligence of the defendant was the sole efficient cause for the collision, are all questions for the jury.

For the errors specified herein the case must be reversed and is remanded for a new trial. It is ordered that the trial judge permit such amendments to the pleadings as may be necessary.

CHRISTIANSON, MORRIS and NUESSLE, JJ., concur.

BURR, J. (Dissenting.) The majority opinion clarifies the situation thoroughly so far as the facts and circumstances are concerned. There was ample evidence sustaining all of the material issues in the case—the relations of parties defendant to each other, negligence of the defendants, contributory negligence of the deceased, and all other issues

pertinent to the case—and these were resolved by the jury in favor of the plaintiff.

The case is reversed and sent back for a new trial because of a negative and an affirmative act on the part of the court.

It is said the court should have instructed on the doctrine of the last clear chance. The answer to this is that no such instruction was requested. The court gave an exhaustive and comprehensive charge upon the essential and controlling issues, and it is a well-settled rule in this jurisdiction that in such case there is no reversible error in failing to charge on a matter not requested. See from Lindblom v. Sonstelie, 10 N. D. 140, 145, 86 N. W. 357, to Northwestern Nat. Bank v. Howlett, 64 N. D. 664, 255 N. W. 574.

The appellant did ask the court to charge: "There is no pleading of last clear chance in this case. So you are not entitled to base any verdict here in favor of this plaintiff on the theory that Coman could have avoided the accident after discovering plaintiff decedent's peril. If Mr. Hausken was himself negligent in any manner, however small, and that negligence contributed in any degree, however slight, to cause his injury, then plaintiff cannot recover."

But this does not ask definition of "last clear chance." The evidence introduced shows the principle was present, so it was correct to deny the request as framed. The doctrine of contributory negligence, urged in the request, was fully covered by the charge.

The trial court instructed on the presumption founded on the instinct of self-preservation, evidently quoting from Kunkel v. Minneapolis, St. P. & S. Ste. M. R. Co. 18 N. D. 367, 380, 121 N. W. 830. We can readily concede that in the case at bar it was not necessary to so instruct. But the evidence showing how the accident took place does not even suggest a contradiction of this presumption. It does not intimate this "instinct" was not present. In the absence of evidence we would assume death came by accident and not as the result of want of ordinary care and diligence on the part of the deceased or intent on the part of the defendants. But the burden of showing this want of "the exercise of ordinary care and diligence"—that is contributory negligence—is on defendants. Ignatowitch v. McLaughlin, ante, 132, 262 N. W. 352. Thus the presumption there was no lack of ordinary care etc. is present. It is not a conclusive presumption, but

may be rebutted by evidence. When the proper evidence is introduced, it is rebutted. The Kunkel case says, "this presumption is not overcome by the mere fact of the accident, *even though no person saw it,"* intimating the presumption would be present even if some one saw it. The trial court here said, "This is, however, a rebuttable presumption and *may* be overcome by proof that he was negligent." This was correct, so far as it went. It was not necessary, however, and it would have been better for the court to have charged, "it is rebuttable by evidence" instead of "may be overcome etc.," if referred to at all.

But though we may concede that there was error in so charging, yet all error is not reversible. In the trial of a law suit of the magnitude of this case there are innumerable opportunities for error to creep in. Time and change cure most of these errors and subsequent events render most of the remainder harmless. Not only must there be error shown, but the error must be of such a character as justifies reversal. Even if we presume error was harmful, there must be reason for such assumption. In this case, where the evidence is clear and the issues as found by the jury are amply sustained, I cannot conceive how a jury could be misled in any material respect because the court stated a principle of law correct in itself. The jury would have unconsciously considered this "instinct of self-preservation" even though the court made no reference to it. It is something every one knows and every one instinctively adopts as a principle of life. We assume this dead man, if he could speak, would say, "I wanted to preserve my life." There was nothing to indicate even the possibility that the deceased intended to commit suicide or was indifferent as to whether he lived or died.

I believe the judgment should be affirmed.

Filed July 16, 1936.

BURKE, Ch. J. (On rehearing.) A re-argument of this case was had upon petitions filed by both parties.

Respondent contends that the instruction that "The law . . . will presume, prima facie, that a person who has suffered death by accident was, at the time, in the exercise of ordinary care and diligence," was not prejudicial error for the reason that the court at the time of

giving the instruction stated to the jury, "This is, however, a rebuttable presumption and may be overcome by proof that he was negligent." The instruction was taken from the case of Kunkel v. Minneapolis, St. P. & S. Ste. M. R. Co. 18 N. D. 367, 121 N. W. 830; but in that case there were no witnesses to the accident, and that case cites, relies upon and quotes at length from the case of Baltimore & P. R. Co. v. Landrigan, 191 U. S. 461, 48 L. ed. 262, 24 S. Ct. 137. In this latter case, like the North Dakota case, there were no eyewitnesses and the court said: "There was no error in instructing the jury that in the absence of evidence to the contrary, there was a presumption that the deceased stopped, looked and listened. The law was so declared in Texas & P. R. Co. v. Gentry, 163 U. S. 353, 366, 41 L. ed. 186, 192, 16 S. Ct. 1104." In the syllabus the rule is laid down as follows: "In the absence of evidence to the contrary there is a presumption that one who was killed while crossing a railroad track at night stopped, looked and listened before attempting to cross the track." The rule as stated in the North Dakota case and in the Landrigan case, namely, the presumption obtains in the absence of other testimony is in line with the great weight of authority.

Babbitt on Motor Vehicle Law, 4th ed. p. 1608, § 2223, states the rule as follows: "If the circumstances of an automobile collision are fully testified to, the jury should determine the cause on the testimony, not on the presumption that one party obeyed the law." Tyson v. Burton, 110 Cal. App. 428, 294 P. 750; Wilson v. Grace, 273 Mass. 146, 173 N. E. 524. "In the absence of evidence as to the circumstances attending the accident, one who is injured in his person or property in a traffic accident, through the negligence of another in the operation of a motor vehicle upon the highway or of a vehicle moving upon tracks, will be presumed to have used due care for his own safety." 9 Blashfield, Cyc. of Auto. Law (Permanent Ed.) § 6051, p. 323; Abood v. Turner (C. C. A. 3d) 72 F. (2d) 880. "Such presumption, however, disappears in the presence of evidence on the issue of due care." 9 Blashfield, Cyc. of Auto. Law (Perm. Ed.) § 6051, p. 324; Hughes v. Torregrossa, 278 Mass. 530, 180 N. E. 304; Austin v. Eastern Massachusetts Street R. Co. 269 Mass. 420, 169 N. E. 484; Booth v. Frankenstein, 209 Wis. 362, 245 N. W. 191. The presumption does not obtain

where the facts surrounding the killing are disclosed by credible evidence. Pomeroy v. Dykema, 256 Mich. 100, 239 N. W. 342; Russo v. Grand Rapids, 255 Mich. 474, 238 N. W. 273; Richardson v. Williams, 249 Mich. 350, 228 N. W. 766; Fenn v. Mills, 243 Mich. 634, 220 N. W. 770. The presumption ceases when evidence is produced bearing on the question. Hughes v. Torregrossa, 278 Mass. 530, 180 N. E. 304; DeLannoy v. Grammatikos, 126 Cal. App. 79, 14 P. (2d) 542; Blodget v. Preston, 118 Cal. App. 297, 5 P. (2d) 25.

In the instant case the principal witness for the plaintiff and the defendant testified that they saw Hausken all the time he was crossing the street. They saw him at the time and after the horn was sounded, and they agree on his conduct during all of that time. In fact, both parties offered testimony, without objection, for the purpose of establishing the conduct of Hausken during all of that time. Without any reference to this undisputed testimony the court instructed the jury that "The law . . . will presume, . . . that a person who has suffered death by accident was, at the time, in the exercise of ordinary care and diligence, and this presumption is not overcome by the mere fact of the accident," and he placed the burden upon the defendant to overcome this presumption when he stated that it was "a rebuttable presumption and may be overcome by proof that he (Hausken) was negligent." This instruction on the evidence in this case was prejudicial error.

The defendant assigns the refusal to give the following instruction as error, namely: "Under the undisputed facts here I charge you that Mr. Hausken, plaintiff's husband, was negligent in failing to observe the approach of the car driven by Mr. Coman and if this negligence contributed in any degree, even the smallest, to the proximate cause of his injury, then plaintiff cannot recover a verdict here even if you should find that the defendant Coman was also negligent and your verdict should be in favor of the defendants."

The trial judge refused to give this instruction. He states the contentions of the parties as shown by the pleadings, and that "The defendant alleges contributory negligence on the part of Hans Jacob Hausken, that is, they claim that Hans Jacob Hausken was guilty of contributory negligence, or negligent acts himself which contributed to and was the proximate cause of the accident." He then defines con-

tributory negligence; but gives no instruction on the subject of contributory negligence as applied to the facts in the case. Near the close of the instructions he states, "If you fail to find negligence on the part of the defendant or if you find from the evidence that this accident was caused by and through the negligence of the plaintiff's husband, and thus his negligence was the proximate cause of the injury then in that event your verdict will be for the defendant.

"If on the other hand, as I have already indicated, if you find that this accident was caused through the negligence of the defendant, and that his negligence, and not the plaintiff's husband's, was the proximate cause of this accident, and injury, then you will return your verdict for the plaintiff."

In this instruction the jury is plainly told that before they can find for the defendant they must find that there was no negligence on the part of the defendant, or if they found from the evidence that the accident was caused through the negligence of plaintiff's husband and his negligence was the proximate cause of the injury, then their verdict should be for the defendant. In such case the defendant would have to be free from negligence or the negligence of plaintiff's husband would have to be the proximate cause of the accident. The error is not cured by the statement which follows, namely: "If you find that this accident was caused through the negligence of the defendant, and his negligence, and not the plaintiff's husband's, was the proximate cause of this accident, and injury, then you will return your verdict for the plaintiff."

Nowhere does he state that if the jury found that the plaintiff's husband was negligent and that his negligence contributed in any degree as a proximate cause of the accident that they must find for the defendant.

In the case of Clark v. Feldman, 57 N. D. 741, 748, 224 N. W. 167, this court said: "We are of the opinion that a general instruction on the subjects of the negligence and contributory negligence, without a further instruction defining the rights of the parties as they existed under the law then and now in force, as quoted above, was prejudicial in that such instruction did not give to the jury an adequate basis upon which to determine the reasonableness of the conduct of the parties affected." Continuing the court said in the Clark v. Feldman Case, su-

pra, "The rule is 'that whenever the plaintiff's case shows any want of ordinary care under the circumstances, even the slightest, contributing in any degree, even the smallest, *as a proximate cause* of the injury for which he brings his action, his right to recover is thereby destroyed.'" The trial judge was asked for an instruction on contributory negligence and the language in that instruction was taken from the case of Clark v. Feldman, supra. The instruction was refused and no instruction was given to cover contributory negligence as applied to the facts. The question of the contributory negligence of plaintiff's husband was an issue in the case and the defendant was entitled to an instruction on that issue, and the failure to give the instruction was clearly prejudicial error.

On the question of the sounding of the horn appellants cite and rely upon a Kentucky case. Kentucky has not the Uniform Motor Vehicle Act; but § 2739g28, Kentucky statutes, relating to horns, provides that, "Every automobile and bicycle, when in use on a public highway, shall be equipped with a horn, bell or other device . . . and every person operating an automobile or bicycle shall sound said horn or other sound device whenever necessary as a warning of the approach of such vehicle to pedestrians, or other vehicles, but shall not sound said horn or sound device unnecessarily." In construing this statute the court, in the case of United Casket Co. v. Reeves, 206 Ky. 581, 267 S. W. 1108, said: "It may be conceded that the statute imposes on the person operating the machine the duty to sound the horn or other device only when it is necessary to warn pedestrians and other vehicles of the approach of the machine, and that, as a general rule, the question of necessity is one of fact for the jury, but in this case the driver admits that he saw plaintiff and her little brother out in the street playing with a dog, and the evidence shows that the dog first crossed over in front of the truck, then the boy, and that he was followed by plaintiff, who was about 10 feet behind him. In view of these circumstances, the court did not err in holding as a matter of law that it was the duty of the driver of the truck to give warning of its approach to pedestrians whom he saw, or, in the exercise of ordinary care, should have seen, crossing, or about to cross, in front of the truck."

Now, in the instant case, Hausken had got outside of the lane the defendant was traveling in and was continuing on across the street

when he was frightened by the sounding of the defendant's horn. If he had been crossing the other way and going towards and in front of defendant's automobile, like the plaintiff in the Kentucky case, we could say, as the Kentucky court said, that as a matter of· law the sounding of the horn was a necessary, reasonable warning; but in the instant case it was a question for the jury.

We do say in the opinion "If the jury should find that the negligence of Hausken in crossing the street created the emergency and contributed to the injury then the plaintiff would not be entitled to the emergency instruction." As applied to the facts in this case it is more accurate to state—If the jury should find that the .negligence of Hausken after the blowing of the horn by the defendant created the emergency the plaintiff would not be entitled to the emergency instruction. It is well settled that no person is entitled to an emergency instruction when his own negligence created the emergency.

If, in another trial, there is evidence supporting the doctrine of discovered peril or the last clear chance, that question should be submitted to the jury under proper instructions.

CHRISTIANSON, MORRIS and NUESSLE, JJ., concur.

BURR, J. After re-argument I conclude the judgment should be reversed because of lack of instructions in full on contributory negligence.